## Commonwealth *versus* Wilson.

A judgment on a bond secured by mortgage, is not payable out of the proceeds of a sheriff's sale of the mortgaged premises, under a junior judgment. The Act of 6th April 1830 preserves the lien of the mortgage *debt* from being discharged by such a sale.

The Act 16th April 1845, § 5, was merely declaratory of the existing law. Whitehead *v.* Purnell, 2 *Miles* 434, overruled.

ERROR to the Common Pleas of *Juniata county*.

This was an action of debt by The Commonwealth of Pennsylvania, for the use of William and Samuel Cross, against William W. Wilson, late sheriff of Juniata county, upon his official bond.

On the 30th March 1839, Samuel and William Cross executed a mortgage to Solomon Stahlman, on a tract of land in Lack township, to secure the payment of five bonds; one for $350, on the 1st April 1840; one for $300, on the 1st April 1841; one for $350, on the 1st April 1842; one for $500, on the 1st April 1843; and one for $500, on the 1st April 1844. This mortgage was recorded on the 29th April 1839, and was the first lien upon the premises.

On the 14th March 1842, judgments were obtained by Stahlman on the bonds payable in 1840 and 1841; which were transferred to William J. Kirk.

On the 14th April 1842, J. & J. Milliken obtained a judgment against William and Samuel Cross, for $122.87; and under an execution issued on this judgment, the mortgaged premises were levied on and sold by the sheriff for $1405.

The defendant, as sheriff, distributed the proceeds of sale, and applied the same in payment of the judgments against William and Samuel Cross, in their order, including those entered on the mortgage bonds. The fund was insufficient to reach the judgment of J. & J. Milliken; which was revived in 1856, for $228.88, and on a *testatum fieri facias* issued to Centre county, the personal property of the Crosses was levied on; when a compromise was effected—Milliken agreeing to receive $150 and the costs, in full of his claim, and to transfer the judgment to the Crosses.

The court below (GRAHAM, P. J.) delivered the following charge to the jury:—

" There are no facts disputed, and the counsel agree that the question raised upon the facts we have stated is one of law, which the court must decide. The defendant's counsel contend, first, that if the Crosses can recover, they are only entitled to the amount paid to them, and not to the whole amount of Millikens' judgment; secondly, that the Milliken judgment was paid in law, that the Crosses had a good defence to the *sci. fa.*, and ought not

[Commonwealth *v.* Wilson.]

to have permitted Millikens to obtain judgment on it; and thirdly, that the sheriff's appropriation was legal, and he is, therefore, not liable on his bond.

"If plaintiffs are entitled to recover, their redress must be measured by the injury they sustained by reason of the misappropriation by the sheriff. They cannot add to their loss, the injury sustained by Milliken in compromising with them for less than his judgment; nor would it be equity to permit them to avail themselves of the clemency of their creditors, to recover money they had never paid, from a party who had fully accounted for all he had received.

"If the appropriation was legal, there can be no recovery, because there is no breach of the condition of the sheriff's bond; but if illegal, then Milliken would have his action against the sheriff, and we see nothing to prevent the defendants, who compromised by payment of a part, using the remedy which Milliken might have used to indemnify himself for the amount thus paid.

"The point presented by this case is, whether a judgment obtained upon a bond secured by a mortgage, is a lien upon the equity of redemption, and entitled to payment out of the proceeds of sale upon a judgment junior to the mortgage. And singular as it may appear, this very point does not appear to have ever been settled by our Supreme Court. The cases of Willard *v.* Norris, 2 *Rawle* 56, and Presbyterian Corporation *v.* Wallace, 3 *Id.* 109, rule that a sale on a judgment discharges the lien of a prior mortgage, although such mortgage be the first lien and not due. The Act of 6th April 1830 changed the law on this subject. It provides that when the lien of a mortgage is prior to all other liens upon the same property, except other mortgages, ground-rents, and the purchase-money due to the Commonwealth, the lien of such mortgage shall not be destroyed or in any way affected by any sale made by virtue or authority of any writ of *venditioni exponas*. Subsequently to the Act of 1830, it was decided in Pierce *v.* Potter, 7 *Watts* 477, and Berger *v.* Hiester, 6 *Whart.* 214, that a sale upon a *vend. ex.* issued upon a judgment obtained on a mortgage bond discharged the lien of such mortgage. Thus stood the law in 1842, when the present sale was made. The argument of plaintiff's counsel is, that if the appropriation is sustained, it discharges the lien of the mortgage as to the bonds on which judgment has been obtained, which is contrary to the Act of 1830, which protects the mortgage lien from being discharged by a sale upon a *vend. ex.* issued upon a junior encumbrance. But it is clearly shown in Pierce *v.* Potter, that although a sale upon a *vend. ex.* issued upon a judgment on a mortgage bond, is within the letter of the Act of 1830, it is not within the meaning and intention of the legislature. For if such

[Commonwealth v. Wilson.]

were the proper construction of the Act, a mortgage, payable in ten or twenty annual payments, could not be collected by proceeding to judgment on the bonds, but the collection of the whole would be suspended until one year after the last payment became due—a consequence which the legislature have guarded against in the Act of 16th April 1845 (which would have covered the present case, had it been passed prior to the sheriff's sale); in that act, they except from its provisions, sales made on judgments obtained upon mortgage bonds, thus recognising the propriety of the cases of Pierce v. Potter and Berger v. Hiester.

"The clear intent and meaning of the Act of 1830, is that a senior mortgage shall not be disturbed, or its lien impaired, by a sale upon a junior encumbrance. So long as the mortgagor chooses to rest upon his mortgage, no junior encumbrance can impair its lien. But if he deems it prudent to add to his security and extend his lien by proceeding to judgment on some of the bonds, he thus acquires a lien upon all defendant's real estate, with the power to issue execution and seize the personal estate. If he chooses to change his position from a mortgagee, and add the further security of a judgment to the lien of his mortgage, he ought not to complain if the law recognises the position he has assumed, and treats him as other judgment-creditors. He has thus acquired a lien upon all defendant's real estate, and why should he not have a lien, by force of the same judgment, upon the equity of redemption in the mortgaged estate? He cannot be injured by such lien. If the sale does not reach his judgment, the lien of his mortgage remains. If his judgment is covered by the sale, he cannot, or ought not, to complain that the lien of his mortgage is in part discharged by payment of the bonds due, and which he has prosecuted to judgment. The mortgagor cannot, therefore, be injured; nor does he complain in this case, for he has received the money. But subsequent creditors complain that he received it improperly and to their prejudice. Prior to the Act of 1830, the whole mortgage would have been paid out of the sale. Does that act place them in a better position? It does not embrace this case; it provides that the lien of a mortgage shall not be destroyed or affected by a sale upon a *vend. ex.* It is silent as to the lien of judgments, leaving them to stand as they did before its passage. In Whitehead v. Purnell, 2 *Miles* 434, decided in the District Court of Philadelphia, in 1840, it was ruled, that a sale on a junior mortgage discharged the lien of an older judgment entered on a prior mortgage bond. It is true, this case is not binding upon us, but it was acquiesced in without a writ of error. In Kuhn's Appeal, 2 *Barr* 264, the money was claimed upon a junior judgment entered upon a senior mortgage bond, and an attempt was made to connect the lien of the judgment with the prior lien of the mortgage, but the money was directed to be appropriated to the judgments accord-

ing to their priority. Whether any part was applied to the judgment on the mortgage bond does not appear from the report of the case, but if the proceeds of sale were not exhausted in payment of prior liens, under the ruling of the court, the judgment on the bond secured by the first mortgage would have been payable in the order of its lien. In that case, the lien of the judgment on the mortgage bond is considered as separate and distinct from the lien of the mortgage. If the judgment is paid by virtue of its lien as a judgment, it satisfies the mortgage *pro tanto;* if it is not paid, by reason of prior judgments absorbing the fund, the mortgage remains, its lien being unaffected by the entry of judgment upon the bond. In Kuhn's Appeal, it is conceded in the argument by the counsel for the judgment creditors, that the judgment on the mortgage bond ' is to be paid in its order of date, for it is a separate and independent lien, and as such, is treated like any other judgment.'

" That the law was so considered, up to 16th April 1845, is evident from the Act of that date, the 5th section of which provides, that ' the entering of any judgment for the same debt, secured by any mortgage, shall not cause a sheriff's sale of the mortgaged premises to destroy or in any way affect the lien of such mortgage, nor shall the plaintiff in such judgment be entitled to any part of the proceeds of such sale; Provided, always, that such sale has not been made under or by virtue of such judgment.' This is a clear legislative recognition that the law was as we have stated, prior to the passage of that act, and that legislative action was required in 1845, to prevent a judgment on a mortgage bond being discharged by a sale on a prior or subsequent judgment, as it was required in 1830, to prevent a sale upon a judgment discharging the lien of a prior mortgage.

" For the reasons stated, we consider the appropriation by the sheriff to the judgments in the order of the priority, including the judgments on the mortgage bonds, a proper and legal appropriation; that the evidence shows no breach of the condition of his bond; and you will, therefore, find for the defendant."

To this charge the plaintiffs excepted; and a verdict and judgment having been rendered for the defendant, they removed the cause to this court, and here assigned the same for error.

*Casey* and *Doty*, for the plaintiffs in error.—The only question here presented is, whether, prior to the Act of 1845, the judgments obtained on the mortgage bonds were entitled to priority over a subsequent judgment, out of the proceeds of the sale of the equity of redemption. The law was the same before that act as since. It sprang from the groundless fears of mortgage creditors, caused by the decision of the District Court of Philadelphia, in Whitehead *v.* Purnell, 2 *Miles* 434. But that case was never

[Commonwealth v. Wilson.]

recognised as law by this court; on the contrary, it is expressly repudiated, in principle, in Kuhn's Appeal, 2 *Barr* 264. This case was before the Act of 1845, and shows that the mere entry of a judgment for the whole or a part of the mortgage debt, did not divest the lien of the mortgage, when the sale was not made on such judgment. And the converse of this proposition, that the mortgage is discharged when the premises are sold for any part of the mortgage debt, is so well established by Pierce v. Potter, 7 *Watts* 475, Berger v. Hiester, 6 *Wh.* 210, and many subsequent cases, as to put it beyond question. It is equally well settled, that no claim can participate in the proceeds of a judicial sale, whose hold upon the estate is not thereby divested.

*A. Parker*, for the defendant in error, relied upon the reasoning of the learned judge of the Court below, in his charge to the jury.

The opinion of the court was delivered by

READ, J.—In Pennsylvania, a mortgage is considered merely as a security for the debt, and confers upon the mortgagee nothing more than a lien on the land. A judgment is also a lien on land. Both are, indeed, only encumbrances. This was clearly the view taken by the courts, when they decided, that a sale under a junior judgment sold the whole estate in the land, and discharged all prior liens, whether by mortgage or judgment. When, therefore, the legislature passed the Act of the 6th April 1830, preserving in such cases the lien of prior mortgages, they did not change the character of these securities, which still remained only encumbrances. All that was really done, was, in effect, to say, the mortgage debt shall remain a lien on the land, and the purchaser at sheriff's sale must take the real estate subject to it. It is still a sale of the land, subject to the payment of this debt. When, therefore, a purchaser bids at sheriff's sale, if there be a first mortgage of say two thousand dollars, his bid is that amount less than what he conceives to be the full value of the land; and it must have been the intention of the legislature, that this should be the unvarying rule; as, otherwise, great injustice might be caused both to debtor and purchaser, as well as to the creditor, by making the amount of the encumbrance remaining on the land, depend upon the situation and condition of subsequent judgments.

If a sale is made on a judgment for the whole or a part of a debt, or even for the interest of part of a debt secured by a mortgage, it has the same effect as if the sale had been directly made under proceedings upon the mortgage security itself, and both before and since the Act of 1830, it discharges the lien of a first mortgage: McCall v. Lenox, 9 *S. & R.* 304; Pierce v. Potter, 7 *Watts* 475; Berger v. Hiester, 6 *Whart.* 210; Hartz v. Woods,

[Commonwealth *v.* Wilson.]

8 *Barr* 471; Clarke *v.* Stanley, 10 *Barr* 472 ; West Branch Bank *v.* Chester, 1 *Jones* 282; Blocker *v.* Blocker, 11 *Leg. Int.* 64. So in Bury *v.* Sieber, 5 *Barr* 431, where a part of the purchase-money was, by the deed of conveyance, made a lien on the land, and also a bond given for the amount, upon which judgment was obtained, and the premises sold by the sheriff, it was held, that the lien of the judgment related to the date of the lien in the deed. "We see," says Judge ROGERS, "no substantial difference between this case and McCall *v.* Lenox, 9 *S. & R.* 310, for the lien created by the deed, and the judgment on the bond, on which suit is brought, arise out of the same transaction. They are, in contemplation of law, one instrument, form one security, and consequently, the lien of the judgment, as is there decided, must relate to the date of the lien in the deed."

There is, therefore, a clear union between the mortgage and the judgment on the bond secured by it—both being securities for the same debt ; and the lien of the judgment necessarily relates back to the date of the lien of the mortgage. Now the legislature have expressly declared that the lien of the mortgage, that is, of the debt secured by it, shall not be destroyed or affected by a sale under a writ of *venditioni exponas.* The only exception to this rule is the one just stated, where the proceeding is the act of the mortgagee. In all other cases, the sale must be subject to the mortgage debt.

But it is attempted to make another exception, by misapplying what is said in the dissenting opinion in McCall *v.* Lenox, about the equity of redemption, separating the estate into two parts, and considering one portion as vested in the mortgagee and the other in the mortgagor, and the latter only as subject to the lien of subsequent judgments. In The Corporation *v.* Wallace, 3 *Rawle* 127, Chief Justice GIBSON expressly negatives the idea that the mortgagee is the owner of an estate in the land; and regards his mortgage as a bare encumbrance, and the accessory of a debt. But taking the Chief Justice's illustration in that case, what would subsequent judgments bind if there are three or more prior mortgages? "But what will be said," remarks the Chief Justice, "of a third mortgage, after the equity of redemption has also been conveyed? Contrary to the professional sentiment here, it would be simply void, unless there be equity of redemption springing from equity of redemption in an infinite series, like certain mathematical quantities, which, though perpetually vanishing, are perpetually in view."

So if there be an older judgment and subsequent mortgages, and then younger judgments, what do these last bind? The old law remains, in this case, clearly, and they are all only encumbrances and liens on the land, and a sale on a junior judgment extinguishes the whole of them. It is certain, then, that the Act

[Commonwealth v. Wilson.]

of 1830 does not change the law, and convert a mortgagee into an owner of the land for a single purpose. If it did, then it would contradict itself both in letter and spirit, for it speaks only of the lien of the mortgage which is to be preserved, and its professed design was to retain the lien by making the sale subject to the mortgage debt.

In this simple view of the law, the decision in Whitehead v. Purnell, 2 *Miles* 434, was a clear error; and the 5th section of the Act of the 16th April 1845 is only declaratory of what the law really was.

The sale, therefore, in this case, under the junior judgment, was subject to the lien of the first mortgage, and of the whole debt secured by it, and no part of the proceeds of that sale should have been applied to the payment of the judgments on the mortgage bonds. The court, therefore, erred in saying that the evidence showed no breach of the condition of the official bond of sheriff Wilson, and the judgment entered for the defendant must be reversed.

Judgment reversed, and a <i>venire de novo</i> awarded.