Commonwealth, Appellant, *v.* Udziewicz et al.

544

Argued November 28, 1945. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*M. Louise Rutherford*, Deputy Attorney General, with her *M. A. Kornreich, Jacob L. Aaron*, Special Deputy Attorney General, and *James H. Duff*, Attorney General, for appellant.

*A. C. Flick, Jr.*, with him *R. Pierson Eaton*, for appellee.

*Paul M. Crider* and *Edmund C. Wingerd*, filed a brief for interested persons.

Opinion by Mr. Justice Drew, March 25, 1946:

John Udzienicz, also known as John Udziewicz, received old age assistance under the Act of June 25, 1936, P. L. 28, and the Public Assistance Law, the Act of June 24, 1937, P. L. 2051, in the aggregate sum of $855.20. The

Commonwealth of Pennsylvania, Department of Public Assistance, entered into a written agreement with him in order to better secure reimbursement. This contract provided for a maximum advance of two thousand ($2,000) dollars and that judgment could be confessed against him for the total sum. The real debt was the amount actually expended for his assistance. The Commonwealth obtained judgment against him by amicable confession in the Court of Common Pleas of Warren County in the sum of $2,000. He was owner of certain real estate located in that County which became bound by that judgment lien. On August 3, 1942, this real estate was sold at a County Treasurer's sale for nonpayment of taxes, and purchased by J. R. Hunter and W. J. Knupp. The latter party died on March 9, 1943, appointing Montano O. Knupp executrix of his estate. J. R. Hunter and wife, by deed dated August 14, 1943, conveyed the premises to Montano O. Knupp. Within the time specified by law, a writ of scire facias was issued and served upon the terre tenant, who filed a motion to strike off the judgment. It was agreed in open court between counsel that the only question for determination was whether or not the judgment lien of the Commonwealth was divested or discharged by the County Treasurer's tax sale. The court below held that it was divested and made absolute the rule to show cause why the judgment should not be stricken off. The Commonwealth appealed.

Generally speaking, a judicial sale of real estate divests all prior and subsequent liens on the property sold, unless preserved by statute or are by nature incapable of discharge: *Baird v. Moshannon C. M. Co.*, 318 Pa. 63, 178 A. 19; *Silverman v. Keal*, 135 Pa. Superior Ct. 568, 7 A. 2d 57. However liens in favor of the Commonwealth are only divested to the extent permitted by statute: *Commonwealth v. Lowe Coal Co.*, 296 Pa. 359, 145 A. 916. This is because of the inherent right of the sovereign to have priority of payment of its obligation.

The question of sovereign right is not involved in the instant case. This judgment lien was created by a contract of the parties; none of the attributes of sovereignty entered into it because the State voluntarily gave them up. Judge WADE in the court below aptly said: "In any event, when the Commonwealth stepped down from its sovereign position and entered into a contract with John Udzienicz for the better security of its loan to him, and carefully provided that it contain a confession of judgment, then the status of the two parties was that of private citizens . . .

'In General. A state entering into contracts lays aside its attributes of sovereignty, and binds itself substantially as one of its citizens does when he enters into a contract, and in general, its contracts are interpreted as the contracts of individuals are, and controlled by the same laws.' 25 R.C.L. §25, p. 392."

The Commonwealth contends that this judgment lien arose out of the administration of a governmental function of granting public assistance to the indigent and is a "public account" under Section 1401 of the Fiscal Code (Act of April 9, 1929, P. L. 343, as amended) and was not discharged by the tax sale. We do not agree with this contention for several reasons. In the first place, the Support Law, Act of June 24, 1937, P. L. 2045, as amended, which provides for public support of indigent persons also contains provisions as to how the money so lent is to be recovered. Section 4 of the Act permits any public body or public agency to sue for money so expended if the recipient owned real or personal property at the time support and maintenance were given to him and ". . . any judgment obtained shall be a lien upon the real estate of such indigent person, and be *collected as other judgments.*" (Italics added). By providing for this procedure (this being the method followed by the Commonwealth) it is clear that the legislature did not intend these debts to be considered "public accounts" and collected in the manner

prescribed for collection of accounts by the Fiscal Code. It is also to be noticed that the Fiscal Code, §1401, provides for the creation of first liens, giving the Commonwealth priority of payment. We have been shown no provision preserving the liens from divestment.

In *Jones v. Tatham*, 20 Pa. 398, 411, we said: ". . . when the rights of the Commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily implied.": *Baker v. Kirschnek*, 317 Pa. 225, 176 A. 489. We are of opinion that there does exist legislative authority for the divestment of the Commonwealth liens of the nature herein involved. The property upon which the Commonwealth's lien was imposed was sold under authority of the Tax Sale Act, the Act of May 29, 1931, P. L. 280, as amended. Section 4 provides as follows:

"All taxes unpaid and so returned and docketed, as aforesaid, shall be a first lien, subject as hereinafter stated, on said real estate liable for the payment thereof, together with all charges, interest, expenses and fees added thereto for failure to pay promptly; and such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property before any mortgage, obligation, claim, lien or estate with which said property may have or shall become charged or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made, and liens in favor of the Commonwealth of Pennsylvania, which shall have priority to such tax liens. All taxes returned under this or any previous statute supplied hereby shall be first liens until sold, as hereinafter provided, or unless sooner discharged."

This means what it says, that is, that tax liens on which the sale was made shall have priority in payment from the proceeds of such sale over everything except the costs of sale and of the writ and of liens in favor of the Commonwealth, and makes the claim of the Commonwealth one of priority of distribution and not of preser-

vation of lien. Section 9 of the Act is even more explicit:
"Every such sale shall discharge the lien of every obligation, claim, lien or estate with which said property may have or shall become charged, or for which it may become liable; except no such sale shall discharge the lien of any ground rent, municipal claim or tax remaining unpaid . . ."

With these two sections of the Tax Act in mind it is hard to avoid the conclusion that by necessary implication the legislature intended the lien of the Commonwealth to be discharged since in one section of the Act there is expressly given to the Commonwealth liens *priority in payment* while in the other section they are not mentioned in the class of preserved liens. Judge DAVISON in the Court of Common Pleas of Franklin County in construing these provisions in the case of *Commonwealth of Pennsylvania, Department of Public Assistance v. Caroline E. Tall, Defendant, Roy C. Teal and Margaret Teal, Terre-Tenants,* No. 34 April Term, 1945, Sci. Fa. Sur Judgment No. 58 April Term, 1940, wherein the same questions as here were raised, said: "From this recital of the liens which are protected from discharge by said tax sale under the terms of said Act of Assembly it will be observed that while municipal claims and taxes unpaid are carefully enumerated and the lien preserved, that liens in favor of the Commonwealth of Pennsylvania, being liens of somewhat the same nature and kind as municipal claims and taxes, are not mentioned in the list of liens not discharged. This seems to us to be significant as indicating that the legislature did not intend to preserve the lien of the Commonwealth under such sales, but by section 4 to provide for a priority of payment out of the proceeds of such sale." The legislature specifically exonerated certain liens from discharge by said tax sale, and did not include liens of the Commonwealth, so we can only find that it did not intend to preserve such liens, but having already provided for their priority in payment, rested satisfied with that

ample protection to the Commonwealth. The tax sale divested the lien of the Commonwealth as any other judgment is divested.

Order affirmed.