## Commonwealth v. Brown

*David Stahl*, Attorney General, for Commonwealth.

*Goodman & Notopoulos*, for defendant.

KLEPSER, P. J. November 27, 1962.—This matter has evolved from our decision in the First National Bank of Altoona v. Brown, 27 D. & C. 2d 569 (1961). In that case, we held that Commonwealth sales tax liens were not entitled to priority of payment over a prior-recorded mortgage from proceeds for distribution following a sheriff's sale of the realty involved on mortgage foreclosure proceedings. That opinion was based on our finding that section 548(b) of the Selective Sales and

Use Tax Act of March 6, 1956, P. L. (1955) 1228, as amended, governed the order of priority upon any judicial sale, superseded that portion of section 1401 of The Fiscal Code of April 9, 1929, P. L. 343, which had earlier granted general priority to all State tax liens, and therefore subordinated this particular type of Commonwealth claim to prior-recorded liens.

The Commonwealth, Department of Revenue, Bureau of Sales and Use Tax, has now caused a writ of execution to be issued against the same real estate now in the hands of the purchaser at the aforesaid sheriff's sale, Ward Terminals, Inc., on grounds that its liens were not thereby divested and its right to seek satisfaction still continues against this property. The terre-tenant's petition to set aside the writ of execution is now before us.

Certain reasons asserted by the terre-tenant in support of its attempt to set aside the writ bear little merit and require no detailed discussion. To begin with, we find no such delay by the Commonwealth, either from the standpoint of time or prejudice, to indicate that the assertion of its alleged rights are barred by laches. Moreover, while laches may be imputed to the Commonwealth or its representatives, it is done only in rare cases: Breisch v. Locust Mountain Coal Co., 267 Pa. 546, 110 Atl. 242, 9 A.L.R. 1330 (1920). At both stages of this matter, the bureau has acted promptly in the protection of Commonwealth interests.

The argument that our prior opinion in this case is res adjudicata on the issue of divestiture and therefore of itself precludes the writ of execution also must fail. True that the general rule relating to ordinary liens and encumbrances has long been that these which are paid or entitled to payment out of the proceeds of a judicial sale are divested by the sale. See Commonwealth v. Wilson, 34 Pa. 63 (1859). The lienholder, in other words, normally comes into entitlement to a share

of the proceeds realized only when the sale has divested the lien, and it is only where the lien will fail to survive such a sale that he has the right to assert his claim against the proceeds for distribution. No such mutual exclusion between priority of payment and divestiture exists as a general rule in the area of Commonwealth tax liens, however. As stated in the article on execution sales: Lien Divestiture and Distribution of Proceeds in Pennsylvania, 58 Dickinson Law Review 244 (1954), at page 251:

"As a matter of common law right, the Commonwealth's lien for taxes continues on the property until the tax claim is paid in full. If the proceeds of a sheriff's sale are insufficient to pay the Commonwealth's claim in full, the lien continues for the unpaid balance. This rule has been incorporated into the Act of June 3rd, 1933 (The Fiscal Code, P.L. 1474, 72 P.S. §1401 as amended) . . ."

Since we are dealing with sovereign rights, therefore, these two issues may well be completely independent of each other as readily distinguishable and separate phases of sovereign prerogative. We have previously decided only that the Selective Sales and Use Act is such an enactment as clearly to render secondary the Commonwealth's *right to payment* out of judicial sale proceeds; not a word concerning *divestiture* appeared therein. The issue touching upon this latter question was not then before us and would therefore have been considered but prematurely at that time in any case. Consequently we must now consider the merits on the matter of divestiture.

The opinion in Hopkins v. Rettinger, 230 Pa. 192, 79 Atl. 255 (1911), held that: "Statutes providing that taxes shall be a lien which shall be fully paid and satisfied before other liens, have been repeatedly construed as not preserving the lien of such taxes from divestiture by judicial sale: . . ."

The able argument of the Commonwealth is that this case and those cited for the principle therein treat only municipal claims and, while conceding the general rule that local tax liens are divested by such a sale absent statutory authority to the contrary, that the rule is not extended to Commonwealth tax liens, which are preserved in the absence of contrary statute. But the problem seems to us to be: what is a "statute to the contrary?" The Commonwealth would apparently require the spelling out of divestiture to be in absolute and express language in all instances before the unsatisfied sovereign lien should be terminated. This strict view ignores the fact that it is rather the clear *intent* of the legislature, as derived from the wording of the statute, which governs. While no statute is presumed to deprive the Commonwealth of any prerogative, right or property, the legislative intention to do so may nevertheless be clearly manifest not alone by express terms, but also by necessary implication. See Lichtenstein v. Pennsylvania Turnpike Commission, 398 Pa. 415, 158 A. 2d 461 (1960); Hoffman v. Pittsburgh, 365 Pa. 386, 75 A. 2d 649 (1950); Culver v. Commonwealth, 348 Pa. 472, 35 A. 2d 64 (1944).

The fact that the selective sales and use tax is admittedly silent in terms of any explicit language concerning divestiture nevertheless does not render the implication of section 548 any the less clear. The position of the Commonwealth's sales tax liens in the order of priority is specifically provided for in section 548 (b). We think the language of the Pennsylvania Supreme Court in the case of Commonwealth v. Udziewicz, 353 Pa. 543, 46 A. 2d 231 (1946), is here most pertinent. Where there the Commonwealth was trying to assert a different type of sovereign lien (Department of Public Assistance), these words of the court at pages 547-48 are significant:

"We have been shown no provision preserving the liens from divestment.

"In Jones v. Tatham, 20 Pa. 398, 411, we said: '. . . when the rights of the Commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily implied.': Baker v. Kirschnek, 317 Pa. 225, 176 A. 489. We are of the opinion that there does exist legislative authority for the divestment of the Commonwealth liens of the nature herein involved. The property upon which the Commonwealth's lien was imposed was sold under authority of the Tax Sale Act, the Act of May 29, 1931, P.L. 280, as amended. Section 4 provides as follows: . . .

"that tax liens on which the sale was made shall have priority in payment from the proceeds of such sale over everything except the costs of sale and of the writ and of liens in favor of the Commonwealth, and *makes the claim of the Commonwealth one of priority of distribution and not of preservation of lien.* . . .

"*it is hard to avoid the conclusion that by necessary implication the legislature intended the lien of the Commonwealth to be discharged* since in one section of the Act there is expressly given to the Commonwealth liens *priority in payment* while in the other section they are not mentioned in the class of preserved liens . . ."

It should be noted that the sections of both the Selective Sales and Use Tax Act and of the above-cited Tax Sale Act dealing with priority provide that "such liens shall have priority to and be *fully* paid and satisfied out of the proceeds of the (any) judicial sale." (Italics supplied).

To us the only logical interpretation of the above language in the Selective Sales and Use Tax Act is that the Commonwealth, in seeking satisfaction, is limited to the proceeds of the mortgage foreclosure sale and cannot look beyond such moneys to the transferred property itself. This construction of the provision is

all the more obvious when we consider that here the sales tax liens, although accorded a place in the order of priority of payment from the sale proceeds, were not granted top priority. The ruling of the Udziewicz case finds even stronger application in the matter at hand, for there the Commonwealth lien enjoyed a much more favorable position in terms of high priority. Nor could it be held that a sovereign lien with top priority is divested by necessary implication, and yet when such a lien with but secondary priority is involved it is not so divested? If implied divestiture can apply to a top priority Commonwealth lien, when by the very fact of such priority the legislature has manifested a desire to secure to it "ample protection", the same doctrine must apply with even greater force and reason to a secondary Commonwealth lien, since by the very nature of its subordinate status the evident intention of the legislative mind is revealed that it should not enjoy any such preferred protection.

Surely the legislature has foreseen that by the inferior standing of these Commonwealth sales tax liens to a variety of prior-recorded encumbrances the likelihood of their satisfaction out of judicial sales proceeds is thereby highly diminished. Were the legislature primarily concerned in this act with the sovereignty of sales tax liens we are convinced it would have accorded then not only top priority in certain and unequivocal terms, but also provision against divestiture. That it did neither seems to us to speak plainly against their survival.

The law is clear that by the judicial sale which followed judgment on the bond accompanying the bank's mortgage in this case, the lien of the mortgage was extinguished and discharged from the realty. See Pennsylvania Company v. Emmons, 338 Pa. 513, 13 A. 2d 417 (1940). It would be at least extremely inconsistent to hold that a top-priority lien, such as the bank's mort-

gage here, is divested by the sale whether satisfied in full or not from the proceeds, while the secondary-priority lien of the Commonwealth is divested only if and to the extent it is actually satisfied from the proceeds for distribution. Absent language indicating otherwise, such an absurdity and incongruity cannot be attributed to our legislature, and we are led to the conclusion that the sales tax liens were indeed discharged and divested by the judicial sale and that Ward Terminals owns the property free and clear thereof.

### Decree

And now, November 27, 1962, it is hereby ordered, adjudged and decreed that the prayer of the terre-tenant's petition be sustained and granted and that the writ of execution of the Commonwealth to no. 32 October term, 1962, be set aside and vacated.