### In re Terrance CAMP and Garland Camp, Debtors.

### Bankruptcy No. 86–05165F.

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 18, 1987.

---

Arthur P. Liebersohn, Philadelphia, Pa., for the objectors/debtors, Terrance Camp and Garland Camp.

Mary Benefield Seiverling, Asst. Counsel, Pennsylvania Dept. of Public Welfare, Office of Fraud and Abuse Investigation and Recovery, Civil Recovery Div., Harrisburg, Pa., for Pennsylvania Dept. of Public Welfare.

Edward Sparkman, Philadelphia, Pa., Standing chapter 13 trustee.

## SUPPLEMENTAL MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

### I.

The debtor has filed an objection to the unsecured proof of claim filed by the Department of Public Welfare (DPW). In this matter, DPW filed an unsecured proof of claim in the amount of $19,148.39[1] After the initial hearing held on this dispute, I determined, by opinion dated September 22, 1987, that DPW could hold a valid unsecured claim in accordance with its right to seek reimbursement from the property of a recipient; moreover, I also concluded that this unsecured claim was *in rem*—that is, its existence and value were conditioned upon the recipient debtors' ownership of property subject to DPW's reimbursement claim at the time the assistance was provided. *In re Camp*, 78 B.R. 58 (Bankr.E.D. Pa.1987). As neither party presented any evidence concerning the debtors' ownership of property while they received public assistance, I reopened the record and sched-

uled another hearing in order to obtain the necessary information.

At a hearing held on October 21, 1987, the parties stipulated to the following relevant facts:

1. Debtors received payments from the Pennsylvania Department of Public Welfare (DPW) during the period February 4, 1974, through October 27, 1978, totalling $21,127.50.

2. The debtors' current residence at 7860 Saturn Place, Philadelphia, Pa. 19153, was purchased by them in fee and held by the entireties by deed recorded September 27, 1973.

3. The property at 7860 Saturn Place is subject to the following encumbrances as of the date of debtors' petition on November 7, 1986:

| Lien Holder | Date Recorded | Payoff Balance 11/7/86 |
|---|---|---|
| Atlantic Financial Federal | 9/27/73 | $15,152.40 |
| Department of Public Welfare | 1/27/76 | 2,000.00 |
| Chrysler First Consumer | 8/30/85 | 21,492.70 |
| | | $38,645.10 |

4. Debtors have listed the fair market value of 7860 Saturn Place in their schedules as $49,000.00. The Commonwealth concurs in the $49,000.00 valuation.

In addition, DPW agreed that the debtors possessed no reimbursable property, other than their home, while they were receiving public assistance.[2] Thus, the narrow issue focuses upon DPW's *in rem* unsecured claim as it relates to the debtors' residence.

Both parties agree that the fair market value of this real property, at the time this chapter 13 case was commenced, was $49,000.00. DPW argues that its unsecured claim should be limited only by those liens which predate its payment of public assistance to the debtors. Here, only the lien of Atlantic Financial Federal falls within that

---

1. DPW also filed a secured proof of claim which is not at issue here.

2. The parties also stipulated to the debtors' exemption claims under 11 U.S.C. § 522(d). These exemption claims may be relevant in de-

termining the distribution creditors are entitled to receive under the debtors' chapter 13 plan. *See* 11 U.S.C. §§ 1322, 1325. They are not relevant in determining the amount of DPW's unsecured claim. *See Camp*, 78 B.R. at 64.

category. Thus, DPW contends that its unsecured claim is limited to the lesser of: the amount of assistance provided for which it has not obtained any judgment lien; and, the value of the reimbursable property minus any pre-assistance liens (and minus the amount of the DPW liens, in order to avoid double counting). In the case at bench, the fair market value minus pre-assistance and DPW liens is $31,847.60. The amount of assistance provided for which no lien was recorded was $19,148.39. Thus DPW argues that the latter figure represents its unsecured claim.

Debtors contend that DPW's unsecured claim must be further limited by the lien held by Chrysler First Consumer. Taking this additional lien into account, debtors maintain that DPW's unsecured claim is only $10,354.90. After consideration of the evidence and arguments presented, I agree with debtors' position.

## II.

In my prior opinion in this contested matter, I stated:

> The filing of a bankruptcy petition represents a traditional point when the rights of creditors are evaluated. Since DPW's unsecured claim is *in rem* rather than *in personam*, it makes sense to treat the filing of the bankruptcy case as the functional equivalent of the sheriff's sale in the above hypothetical. If the debtor were to liquidate the property which is subject to reimbursement, DPW's claim would be commensurate with the value of the property. If the property will not be liquidated in the bankruptcy, the value of DPW's claim can be based upon a hypothetical liquidation. *Cf.* 11 U.S.C. § 1325(a)(4).

Essentially, it is the nature and extent of DPW's right to reimbursement as of the date of the bankruptcy filing which define the value of its unsecured claim.

I premised my prior holding that DPW possesses an *in rem* unsecured claim upon its statutory right to seek reimbursement from certain property of the debtors, such as real estate. This right to recover constitutes a claim pursuant to 11 U.S.C. § 101(4)[3] *Camp* at 62–63. At any time after providing assistance DPW can reduce its right to recover to judgment and thereby obtain a lien. DPW's lien would have priority from the date it is recorded by the court. 42 Pa. C.S.A. 8141(3). Its lien would not relate back to the date assistance was granted.[4] *See Commonwealth v. Udzienicz,* 353 Pa. 543, 46 A.2d 231 (1946); *Floyd v. Commonwealth Department of Public Welfare,* 47 Pa.Cmwlth. 338, 407 A.2d 1388 (1979).

While the right to seek reimbursement is limited by state statute, 62 P.S. § 1974, the time when DPW may seek to obtain a judgment is not. Thus, DPW is free to obtain a judgment lien at the time assistance is provided or at any later date (within the applicable statute of limitations, if any). In this case, it is undisputed that DPW did not seek a judgment with regard to $19,148.39 provided in assistance to the Camps prior to their bankruptcy filing. Neither did they do so prior to Chrysler First recording its mortgage. Thus, they could not obtain a lien as against the Camp's property for $19,148.39 which would have priority over the Chrysler First mortgage. DPW offers no cogent reason to distinguish the treatment given to a judgment lien obtained just prior to the commencement of the case and an *in rem* unsecured claim which is valued as of the date of the bankruptcy filing. The value of the former, under § 506, is limited to the debtor's equity as of the moment the lien is recorded; the value of the latter should also be so limited.

Recognizing that DPW's claim is *in rem,* that it is limited by the value of the proper-

---

**3.** Of course, if such a suit were barred for any reason under state law, DPW would not hold an unsecured claim. Here, the debtors make no such argument.

**4.** Indeed, the statute itself says, "[a]ny public body or public agency may sue the owner of such property for [expenses incurred for support and assistance], and any judgment obtained shall be a lien upon the said real estate of such person and *be collected as other judgments* ..." 62 P.S. § 1974(a) (emphasis added). *See also,* 55 Pa. Code § 257–24.

ty, and treating the bankruptcy as a hypothetical liquidation, I must conclude that DPW's unsecured claim is limited to the lesser of the debtors' equity in the property (this is, fair market value minus all validly perfected liens) or the amount of unliened assistance provided.

Implicitly, DPW virtually concedes this result when it argues that "it is the fair market value of the real estate as of the date of filing, (rather than as of the date assistance was provided), which is germane. By choosing the petition date—which is the traditional date for valuing claims—DPW seeks to benefit from any property appreciation after assistance is provided. Fairness dictates that the reverse also be true; any depreciation in value will reduce its claim. Depreciation can be caused by many factors, including calamities and market forces. Additional liens, be they voluntary or involuntary, will reduce the recipients share of proceeds from the sale of property. As it is from the owner's share of these proceeds that DPW would recover its unliened claim, DPW runs a risk in not reducing its claim to lien status. To reduce this risk, it need only obtain a judgment lien. *See generally Gardner v. Commonwealth of Pennsylvania, Department of Public Welfare*, 685 F.2d 106 (3d Cir.) *cert. den.* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982). Entry of a judgment lien will establish DPW's priority in the proceeds.[5]

Thus, I reaffirm my earlier conclusion that the filing of bankruptcy is the functional equivalent to a liquidation for purposes of valuing DPW's claim. As that claim is *in rem*, it is circumscribed by the debtor's equity as of the date of filing. Therefore, DPW has an allowed unsecured claim of $10,354.90.

An appropriate order shall be entered.

---

5. In the case at bench, part of the Chrysler First loan was used by the debtors for home repairs. As these repairs probably increased the fair market value of debtors' residence, such an increase would offset any reduction in DPW's unsecured claim.