COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Plaintiff,

v.

UTP CORPORATION, Hauto Valley Estates, Inc., and Blue Ridge Real Estate Company, Inc., Defendants.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2003.

Decided April 27, 2004.

Jeffrey W. Davis, Harrisburg, for plaintiff.

Janet Marsh Catina, Stroudsburg, defendant, Blue Ridge Real Estate Co.

Timothy J. McMahon, Harrisburg, for defendant, UTP Corporation.

Paul R. Walker, Harrisburg, for defendant, Hauto Valley Estates, Inc.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

The Commonwealth of Pennsylvania, Department of Transportation (Department) has filed a motion for partial summary judgment on the issue of the liability of UTP Corporation (UTP), Hauto Valley Estates, Inc. (Hauto Valley) and Blue Ridge Real Estate Company, Inc. (Blue Ridge) (collectively, Defendants) for the subsidence of State Route 54 (Route 54).

On December 5, 1996, the Department commenced the instant original jurisdiction action against the Defendants seeking reimbursement of costs for repairing a subsided portion of Route 54. In the subsequently amended complaint, the Department sets forth the following allegations to support its action. Route 54 was established in 1931 as a state highway and traverses a certain parcel of land (Parcel) located in the Borough of Nesquehoning, Carbon County. Underneath the Parcel is a railroad tunnel, known as "Lansford–Hauto Tunnel" (Tunnel), built in the late 1860s and early 1870s by Lehigh Coal & Navigation Company (Lehigh Coal) for its anthracite coal mining operation.

In 1962, Lehigh Coal conveyed its interest in the Parcel to Blue Ridge. Blue Ridge in turn conveyed its interest to Hauto Valley in 1963 and quitclaimed its reversionary interest in the Tunnel to Hauto Valley in 1987. In 1993, Hauto Valley quitclaimed its reversionary interest in the Tunnel to UTP. On March 24, 1994, a portion of Route 54 traversing the Parcel subsided. The Department thereafter reconstructed that portion of the highway and restored its natural vertical support by filling the Tunnel at the costs of $834,460.35.

The Department alleges that the subsidence of Route 54 was caused by the collapse of the Tunnel's brick and stone arch roof due to the Defendants' failure to properly maintain it during their respective ownership of the Tunnel, and that the Defendants are therefore jointly and severally liable for the costs for repairing Route 54, plus interests and litigation costs. In their answer and new matter, the Defendants denied their liability and alleged that the subsidence was caused by the Department's failure to properly maintain Route 54. Blue Ridge subsequently filed a motion for summary judgment, claiming that it never acquired any interest in the Tunnel. In a memorandum and order dated May 18, 1999, this Court denied Blue Ridge's motion, noting that the parties' experts reached conflicting conclusions in their affidavits regarding the conveyance of the ownership interest in the Tunnel. After further discovery, the Department has filed the motion for partial summary judgment on the issue of the Defendants' liability.

Summary judgment may be granted in whole or in part, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report...." Rule 1035.2(1) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1035.2(1). Summary judgment may be granted, only if viewing all the facts in the light most favorable to the nonmoving party and resolving all doubt as to the existence of material fact against the moving party, the moving party is entitled to judgment as a matter of law. *Mayflower Square Condominium Ass'n v. KMALM, Inc.,* 724 A.2d 389 (Pa.Cmwlth.1999). Summary judgment may not be granted unless the moving party's right is clear and free from doubt. *Kahres v. Henry,* 801 A.2d 650 (Pa.Cmwlth.2002), *appeal denied,* 573 Pa. 669, 820 A.2d 706 (2003).

The Department contends that the Defendants are liable for the subsidence of Route 54 under the common law and Section 419 of the State Highway Law (Highway Law), Act of June 1, 1945, P.L. 1242, *as amended,* 36 P.S. § 670–419, because the undisputed facts establish that they are the grantees of the ownership interest in the surface and subjacent strata of the area where the subsidence occurred, and that the subsidence was caused by failure of the vertical support of the highway.

█ Under the common law, a landowner has a right to have his or her land supported and protected in its natural condition by the adjoining land. *Pollock v. Pittsburgh, Bessemer & Lake Erie R.R. Co.,* 275 Pa. 467, 119 A. 547 (1923). The courts held that the Commonwealth's right to lateral and subjacent support of public highways is superior to that of a private landowner and extends to the highway in its improved condition. *Id.; Breisch v. Locust Mountain Coal Co.,* 267 Pa. 546, 110 A. 242 (1920). However, the common law liability for subsidence of a state highway is imposed only upon a person who actually withdrew lateral or subjacent support causing the subsidence, not others such as an owner of adjacent or subjacent strata, an assignee, a grantee, a possessor, a licensee or a trespasser who is not the actor in the withdrawal. *Commonwealth v. Solley,* 384 Pa. 404, 121 A.2d 169 (1956); *Commonwealth v. Panhandle Mining Co.,* 315 Pa. 16, 172 A. 106 (1934); *Frederick v. Burg,* 148 F.Supp. 673 (E.D.Pa.1957).

In this matter, Lehigh Coal removed the natural vertical support of the land to construct the Tunnel sixty years before the establishment of Route 54 in 1931. Allegedly, Blue Ridge, Hauto Valley and UTP did not acquire the interests in the surface, adjacent or subjacent area in question until 1962, 1963 and 1993, respectively. Because the Defendants did not remove the natural vertical support in question, they cannot be held liable for the subsidence of Route 54 under the common law.

█ Section 419 of the Highway Law relied on by the Department provides in relevant part:

Whenever a State highway, or any part thereof, subsides by reason of the failure of vertical or lateral support

therefore, it shall be the duty of the person, copartnership, association or corporation then owning the subjacent or adjacent strata ... to provide for the restoration of the vertical and lateral support, and the replacement of the surface of such highway, upon receiving from the department notice to proceed with such restoration and replacement. In the event that such owner of the subjacent or adjacent strata does not proceed, immediately after notice, with the replacement and restoration of the highway, and does not diligently complete such restoration and replacement within a reasonable time, the subsidence is hereby constituted and declared a public nuisance which may be abated by appropriate proceedings, in law or in equity, against such owner. If such owner fails or refuses to provide for the restoration and replacement of the highway, then the department may proceed with such restoration and replacement, and *the underlying owners of the subjacent or adjacent strata, both at the time the vertical or lateral support was removed and at the time the subsidence occurred, and their respective assignees, lessees or grantees* shall be jointly and severally liable for the cost of restoration. (Emphasis added.)

█ Thus, to establish the Defendants' liability under Section 419, the Department must prove, *inter alia,* that (1) the Defendants were the owners of the subjacent or adjacent strata of the area of the subsidence or the grantees of such ownership interest and (2) the subsidence was caused by failure of the vertical or lateral support in the subjacent or adjacent strata.[1]

---

1. The Department argues that UTP is estopped from denying its ownership interest in the Tunnel because it previously objected to

the restoration of the vertical support of Route 54, stating that it intended to reopen the Tunnel in the future. UTP's statement

As to the chain of title to the Parcel and the Tunnel, Blue Ridge's title research expert, Roberta J. Marsh, made the following findings in her affidavit. On November 4, 1868, Lehigh Coal and Nesquehoning Valley Railroad (Nesquehoning Railroad) entered into an agreement, in which Nesquehoning Railroad agreed to build the Tunnel passing through two tracks of land, known as "Leonard Tract" and "Heath Tract," and then lease the Tunnel to Lehigh Coal for the term of 999 years. In 1871, Nesquehoning Railroad acquired the Heath Tract consisting of 401 acres and conveyed it to Nesquehoning Water Company, excepting the portion occupied by Nesquehoning Railroad and a 100–foot wide strip of land. In 1874, Nesquehoning Water Company conveyed the Heath Tract to Lehigh Coal subject to same exceptions.

Thereafter, Lehigh Coal conveyed its leasehold interest in the Tunnel to Panther Creek Railroad Company by deed dated September 26, 1913, which contained a provision that "in the event of abandonment, the right-of-way shall revert to Lehigh Coal." In 1914, Lehigh Coal also conveyed the railroad and railway property to Lehigh and New England Railroad Company which in turn conveyed it to Lehigh and New England Railway Company in 1961. By deed dated May 31, 1962, Lehigh Coal conveyed its interest in the surface of certain land and mining rights and interest in the subsurface to Lepoco Company. By another deed dated May 31, 1962, Lehigh Coal conveyed the surface of certain lots and parcels located in the Borough of Lansford to Blue Ridge, except the 100–foot right-of-way through the Heath Tract. The deed provided that "in the case of abandonment of the railroad so conveyed, or any part thereof, the right-of-way ... so abandoned shall revert to Lehigh Coal...."

On December 30, 1963, Blue Ridge conveyed its interest to Hauto Valley, excepting and reserving the railroad and utility rights-of-way. On November 12, 1987, Blue Ridge quitclaimed any reversionary interest in the railroad right-of-way to Hauto Valley. On May 7, 1993, Hauto Valley quitclaimed a reversionary interest in the railroad right-of-way to UTP. Marsh concluded that any reversionary or remainder rights which may have been held by Lehigh Coal were conveyed to Lepoco Company, not to Blue Ridge, and that Blue Ridge, Hauto Valley and UTP did not acquire any interest in the Tunnel.

Blue Ridge also submitted the report of William Hoffmeyer, Esquire, a title and

---

relied on by the Department was made, however, before the commencement of the instant action. In its answer and new matter, UTP denied its liability for the subsidence of Route 54 and did not admit that it had acquired the interest in the Tunnel. We therefore reject the Department's estoppel argument.

UTP then argues that the Department is estopped from taking inconsistent position that there is no genuine issue of material fact as to the Defendants' ownership interest in the Tunnel after opposing Blue Ridge's previous motion for summary judgment on the basis that there was a genuine issue of material fact on that issue. To support the argument, UTP relies on the doctrine of judicial estoppel, under which a litigant is estopped from taking a position inconsistent with a position asserted in a previous proceeding involving the same issues and parties. *Little v. State Employes' Retirement Board*, 760 A.2d 488 (Pa.Cmwlth.2000), *appeal denied*, 566 Pa. 688, 784 A.2d 121 (2001). The Department amended the complaint after the denial of Blue Ridge's motion, and the parties conducted additional discovery. Moreover, the Department submitted an additional affidavit to support its motion for partial summary judgment. The relevant inquiry in deciding the Department's motion is whether there is no genuine issue of material fact under the entire record. Judicial estoppel is therefore inapplicable to preclude the Department from seeking partial summary judgment.

real estate attorney. Hoffmeyer concluded that the County of Carbon acquired the right to use the Tunnel from Lehigh and New England Railroad Company by deed dated October 29, 1985, that Blue Ridge had no reversionary interest in the railroad right-of-way to convey, and that Blue Ridge quitclaimed the reversionary interest to Hauto Valley merely out of caution. Another title and real estate attorney, Sean Cassidy, Esquire, agreed with Hoffmeyer's conclusion. Hauto Valley's general counsel, Steven M. Cormier, Esquire, testified at the deposition that the 1963 deed from Blue Ridge to Hauto Valley specifically provided that the conveyance did not include the Tunnel area.

The Department's title abstractor, Robert A. Kley, stated in his affidavit that Blue Ridge conveyed to Hauto Valley the ownership interest in the surface above the Tunnel and retained the ownership interest in the Tunnel, and that Blue Ridge conveyed no interests in the Tunnel to Hauto Valley by the 1987 quitclaim deed.

■ It is well established that testimonial affidavits or deposition testimony alone, even if not contradicted, is insufficient to establish the absence of a genuine issue of material fact because the credibility of the testimony is a matter for the factfinder. *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989); *Nanty–Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932); Note to Pa. R.C.P. No. 1035.2. In this matter, the parties' experts offered the conflicting opinion as to whether the Defendants acquired the ownership interest in the Tunnel or the area underneath the surface of Route 54. Therefore, there is a genuine issue of material fact regarding their ownership of the subjacent strata under Section 419 of the Highway Law.

As to the cause of the subsidence of Route 54, the Department's engineer, Laurance A. Beck, testified at the deposition that when he examined the Tunnel three years before the subsidence, the Tunnel's brick and stone arch roof was in an extremely dangerous condition. The Department's chief of maintenance testified that the maintenance worker had previously repaired settlement in the area of the subsequent subsidence and that the subsidence was caused by the collapse of the Tunnel. The Department also submitted the reports of its geotechnical engineers and geophysicist, in which they stated that the Tunnel collapsed due to ground water seepage aggravated by internal erosion of soil over and along the Tunnel, and that the traffic vibration on the roadway did not cause the collapse of the Tunnel.

Hauto Valley submitted the report of John F. Rompalo who investigated the subsidence of Route 54 on March 24, 1994. In the report, Rompalo stated:

> Due to the disappearance of 25,752 cubic feet of clay like material used as fill underneath the highway and between the tunnel, it appears water run-off from the mountain south of Route 54 eroded the fill beneath the roadway which eventually caused the roadway to collapse on top of the tunnel and in turn collapsed the tunnel.

Rompalo's Investigation Report dated March 30, 1994, p. 2.

Since the parties' experts offered the conflicting opinion regarding the cause of the subsidence of Route 54, the Department failed to establish that there is no genuine issue of material facts as to the Defendants' liability under Section 419 of the Highway Law.[2]

**2.** Section 419 of the Highway Law defines the term "subjacent or adjacent strata" as "any

land, or estate, or right therein from which materials have been extracted by mining or

Accordingly, the Department's motion for partial summary judgment is denied.[3]

### ORDER

AND NOW, this 27th day of April, 2004, the motion of the Commonwealth of Pennsylvania, Department of Transportation for partial summary judgment is hereby denied.

quarrying operations causing the subsidence." The Defendants contend that the property in question does not fall within the definition of "subjacent or adjacent strata" because no mining or quarrying activities have been engaged thereon since *Leigh Coal* went out of the coal mining business in the 1950s. Because we deny the Department's motion on the basis that there are genuine issues of material fact as to the Defendants' ownership and the cause of the subsidence, it is unnecessary to address the Defendants' contention.

3. The Department asks this Court to determine undisputed facts, in the event that its motion for summary judgment is denied. Pa. R.C.P. No. 1035.5 provides that upon denial of a motion for summary judgment, the court "may, if practical, ascertain from the pleadings, the evidence and the parties which material facts relevant to the motion exist without controversy and which are actually controverted." (Emphasis added.) We find it impractical to attempt to ascertain undisputed facts from the voluminous record involving the complicated facts. Moreover, the relevant facts are mostly disputed by the parties. It is, therefore, more appropriate for the parties to submit any stipulated facts to the Court before a trial.