IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles A. Blesse, Keith A. Krapf,   :
and Todd Weiss,   :
                Appellants   :
  :  No. 1448 C.D. 2015
        v.   :
  :  Argued: March 7, 2016
Borough of Coaldale   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH           FILED: May 2, 2016


      Charles A. Blesse, Keith A. Krapf, and Todd Weiss (Appellants) appeal from the July 13, 2015 order of the Court of Common Pleas of Schuylkill County (trial court), which granted the Borough of Coaldale's (Borough) motion for summary judgment and dismissed Appellants' complaint alleging that the Borough's furlough of the police department did not constitute a good faith reduction due to economic reasons.

**Facts and Procedural History**

      By letters dated February 14, 2012, the Borough advised Appellants that it was reducing its police force by three full-time officers for budgetary reasons and,

pursuant to section 1190(d) of the Borough Code (Code),[1] this objective shall be accomplished by furloughing the individuals most recently appointed to the force until the reduction is achieved. On August 28, 2013, Appellants filed a complaint in mandamus and for declaratory relief, seeking to recover for lost wages and benefits and alleging that the Borough violated section 1190 of the Code because the furlough did not constitute a good faith reduction due to economic reasons. The Borough filed an answer and new matter, denying the material allegations of Appellants' complaint and alleging, *inter alia*, that Appellants failed to state a claim upon which relief could be granted.

On March 10, 2015, after the parties had completed discovery, the Borough filed a motion for summary judgment, alleging that judgment as a matter of law was proper because the undisputed record evidence demonstrates that the furlough caused a reduction in the total amount of hours the police department worked and that the Borough realized a savings in its budget. Appellants filed a brief in opposition to the Borough's motion, arguing that they produced sufficient evidence of the Borough's bad faith to raise a genuine issue of a material fact and preclude entry of summary judgment.

**Discovery**

Charles Blesse (Blesse) testified that the Borough hired him as a part-time patrol officer in September 2006 and promoted him to full-time status in October 2008. Blesse confirmed that he was furloughed effective March 1, 2012, and reinstated to a full-time position in April 2014. Blesse stated that he first became aware that the Borough was considering furloughing police officers in January 2012

---

[1] 8 Pa.C.S. §1190(d).

2

when, during collective bargaining negotiations between the Borough and the local Fraternal Order of Police (FOP) representative, the Borough's attorney advised the FOP representative that the police must accept a reduction in wages and benefits or the police department would look significantly different. Blesse testified that the Borough Council[2] subsequently voted to furlough Appellants, effective March 1, 2012. (Reproduced Record (R.R.) at 43a-44a, 60a.)

Blesse acknowledged that he never discussed the possibility of a furlough with the Borough Council or the Mayor after meeting with the Borough's attorney, but stated that he believed the furlough was a personal vendetta against the police department. Specifically, he explained that Sergeant Krapf had been injured responding to a call and, consequently, there had been some external discussion regarding whether the call was handled properly. Blesse stated that the discussion was largely generated by two individuals, Mayor Corkery and Councilman Yelito. However, Blesse conceded that he became aware of the alleged discussion only through word of mouth. (R.R. at 44a.)

Blesse testified that, prior to the furlough, the police department consisted of eight police officers; four full-time officers and four part-time officers. Blesse confirmed that the police department provided coverage twenty-four hours a day, seven days a week before the furlough. However, after the furlough, Blesse testified that the police department consisted of seven part-time officers and one full-time officer, the Police Chief. He stated that the Borough hired new officers to the part-time roster following the furlough, but noted that the Borough did not provide police coverage twenty-four hours a day, seven days a week after the furlough. Blesse also stated that, when a shift became available that needed to be covered, a

---

[2] The Borough is governed by a seven-member council. *See* 8 Pa.C.S. §813.

preexisting part-time officer would be called instead of him. He speculated that this occurred because there was a vendetta against him and the other former full-time officers. According to Blesse, the Borough's police department was not reduced in size after the furlough. Instead, he testified that the Borough's budget remained essentially the same and that the number of officers actually increased. Blesse further testified that the layoffs did not occur because of budgetary reasons; rather, the layoffs arose from issues related to failed collective bargaining negotiations with the Borough. (R.R. at 45a-49a.)

Keith Krapf (Krapf) testified that he was hired as a part-time patrol officer in June 2004, that he was promoted to full time in September 2005, and that he was promoted to sergeant in 2007. Krapf confirmed that he was furloughed in March 2012 and that, prior to the furlough, the Borough's police department consisted of eight officers. Krapf stated that he first became aware that the Borough was considering the furlough of police officers during contract negotiations between the Borough and the FOP. He explained that the prior collective bargaining agreement between the FOP and the Borough expired at the end of 2011, but testified that the new collective bargaining agreement had been agreed to and was nearly complete in December 2011, when the FOP agreed to meet with the Borough. At the meeting, Krapf explained that the Borough's attorney withdrew the proposed deal and stated that, if the police officers wanted to remain employed, they must accept a reduction in wages and benefits or the police force would look completely different in a week. Krapf testified that the FOP rejected the Borough's terms and the Borough Council subsequently voted to furlough the police officers. Krapf noted that the FOP was authorized and willing to further negotiate with the Borough; however, the Borough did not continue negotiations with the FOP. (R.R. at 51a-54a, 60a-61a.)

4

Krapf stated that, following the furlough, the police department consisted of nine officers but only the Police Chief remained full time. He further stated that the Borough did not provide police coverage twenty-four hours a day, seven days a week after the furlough and noted that the state police would respond to emergency calls if a Borough officer was absent. Krapf explained that his wages and benefits were reduced after the furlough and testified that the Borough Council maintained that financial issues were the reason for the furlough; however, Krapf stated that he did not believe the Borough's purported rationale because the police department's budget and expenditures were consistent with past years and certain employees received wage raises after the furlough, including preexisting part-time officers. Moreover, he testified that the collective bargaining agreement was virtually complete when the Borough revoked the agreement and proposed new terms, that a Borough secretary advised him that the Borough was not in financial hardship, and that the police force was not reduced because it had more officers after the furlough than before. (R.R. at 55a-57a, 61a.)

Krapf further testified that he was never formally offered a part-time position with the police department. Instead, he explained that the Police Chief generated a new schedule and advised him that the preexisting part-time officers would be scheduled for a minimum of thirty-two hours per week and the remaining hours would be distributed between the remaining officers; however, the remaining officers were prohibited from working more than thirty-two hours and usually only worked eight or sixteen hours per week. Krapf stated that he inquired with the Police Chief numerous times about scheduling, but the Police Chief advised Krapf that he was doing what he was told. Krapf testified that he had heard that the Borough Council and Mayor were directing the Police Chief to schedule the hours that way because they did not like him. Krapf could not say why they did not like him, but

speculated that it was because he had arrested the Mayor before he held office and arrested Councilman Yelito's girlfriend before he was elected. Krapf noted that a subsequent arbitration award mandated that certain officers be scheduled for thirty-two hours per week and that he was ultimately reinstated to a full-time position in April 2014. (R.R. at 58a-59a, 62a.)

Todd Weiss (Weiss) testified that the Borough hired him as a part-time officer in 1985 and promoted him to full-time criminal investigator in July 2007. Weiss confirmed that he was furloughed in March 2012 for purported budgetary reasons; however, he testified that he believed he was furloughed because the Borough did not care for any of the full-time officers. Weiss explained that it was his understanding that the Borough and the FOP had finalized a new collective bargaining agreement in December 2011, but noted that he received a letter in January 2012 scheduling a meeting with the Borough to discuss contract negotiations. Weiss further explained that, at the meeting, the Borough's attorney stated that the police officers could accept reduced wages and benefits or the police force would look entirely different on March 1, 2012. He noted that the FOP rejected the Borough's demands and Appellants were furloughed effective March 1, 2012. (R.R. at 76a-80a.)

Weiss further testified that he believed that the FOP's rejection of the Borough's terms was the reason for the furlough. However, Weiss acknowledged that he did not discuss the reasons for the furlough with the Mayor or any member of the Borough Council. He stated that he did not believe the police force was actually reduced after the furlough because the hours were not reduced; instead, the hours were redistributed to other officers, usually the preexisting part-time officers. Weiss noted that the preexisting part-time officers advised him that they had been told that they would be promoted to full-time work once the existing full-time officers were

gone. Weiss also noted that the Police Chief was responsible for generating the officers' schedule, but at some point the Mayor took over scheduling duties and, after the furlough, he was prohibited from working more than thirty-two hours per week. Weiss testified that he was ultimately reinstated to a full-time position in April 2014. (R.R. at 78a-80a.)

Thomas Keerans (Keerans) testified that he was elected to the Borough Council in 2008, that he was a member of the Borough's finance committee throughout his tenure, and that he had been a member of the Borough's police committee through 2013. Keerans stated that the police committee negotiates contracts with the FOP and attempted to negotiate a new contract in 2011. He explained that, at the end of 2011, the Borough had approved a new agreement with the FOP but, before the FOP could approve the contract, the Borough withdrew its approval. Keerans stated that the Borough withdrew its approval because of budgetary woes; specifically, Keerans testified that the Borough was borrowing more money every year and could not afford all of the police officers' salaries and benefits. He further testified that the Borough met with the FOP and advised the officers that changes must be made or they would likely be furloughed. (R.R. at 143a-44a.)

Keerans testified that a meeting occurred between the police committee, the Borough's attorney, and the FOP. Keerans stated that, at the meeting, the Borough's attorney advised the FOP that the officers must accept a reduction in wages and benefits or the police department would look substantially different as of March 1, 2012. He further testified that the Borough Council voted to furlough three full-time officers at a February 14, 2012 council meeting. Keerans confirmed that the officers were furloughed because of budgetary reasons; specifically, he stated that the Borough was operating in the red. (R.R. at 147a-48a.)

7

Keerans explained that the Borough had exhausted a $60,000.00 line of credit, had borrowed funds via a tax anticipation loan to maintain the Borough government, and had terminated two full-time employees in the Borough's streets department. Keerans estimated that the Borough was approximately $100,000.00 over budget and was borrowing money from a sewer maintenance account. Keerans noted that an increase in workers' compensation insurance premiums, fuel costs, and inflation contributed to the Borough's decision to furlough the officers. However, he acknowledged that the Borough's revenue increased approximately $200,000.00 from 2010 to 2011, that the Borough's Secretary received a raise in 2012, and that the Borough had spent approximately $30,000.00 in capital improvements during 2012. (R.R. at 144a-48a.)

Timothy Delaney (Delaney), the Borough's Police Chief, testified that, prior to February 2012, the police officers' schedules were consistent; that is, Krapf worked second shift, Blesse worked nightshift, and Weiss worked during the weekends and would cover shifts as necessary. Delaney explained that part-time officers would be used if full-time officers were on vacation, using leave time, or if more than one officer was required. Delaney stated that he was responsible for generating the schedule. However, he noted that, after the furlough, he was advised to schedule Appellants for only eight or sixteen hours per week. Delaney testified that he did not comply with the scheduling directive initially; however, the Mayor and members of the Borough Council advised him that if he did not comply he would be laid off. (R.R. at 212a-17a.)

Delaney further testified that he had conversations with the Mayor prior to the furlough and it was his understanding that only one officer would be furloughed. He also stated that he discussed the possibility of furloughs with members of the Borough Council and concluded that the furlough was intended to

8

single out Krapf. Delaney explained that members of the Borough Council frequently encouraged him to suspend Krapf and ordered him to investigate whether Krapf had committed acts of misconduct. Delaney confirmed that Krapf had previously issued a citation to the Mayor and noted that Krapf had raised the issue of Councilman Yelito's eligibility to hold office with the Attorney General's Office because of a prior felony conviction. (R.R. at 218a-28a.)

Delaney confirmed that the Borough purported to furlough Appellants for budgetary reasons, but stated that he believed the actual reason for the furlough was because it was the only way the Borough could get rid of Krapf. Delaney stated that he asked the Borough Council numerous times to identify the shortage in the budget, but was only advised that the police department was bankrupting the Borough; however, he noted that the Borough Council never gave him any specific information regarding how or why the Borough was bankrupt. (R.R. at 227a-233a.)

Scott Cramer (Cramer) testified that he was employed as a part-time patrolman for the Borough from September 2007 to February 2013. He stated that he was scheduled to work approximately thirty-two hours per week before the furlough and would occasionally work more but, after the furlough, he regularly worked more than thirty-two hours per week. Cramer also stated that the Mayor advised him that new full-time officers would be hired after the furlough and that he wanted Cramer to be a full-time officer. Cramer testified that the Mayor also advised him that it was his desire to permanently remove Krapf from the police department and noted that Councilman Yelito was present for some of these conversations. He further testified that, after the furlough, the Mayor was responsible for generating the schedule and, consequently, the officers' schedules changed dramatically; specifically, he noted that Appellants usually worked only one day per week. He confirmed that there were occasions after the furlough where the state police were required to cover a shift for

9

the Borough and testified that this did not occur prior to the furlough. (R.R. at 279a, 286a-89a, 292a-93a.)

Joseph Krebs (Krebs) testified that he was hired as a part-time police officer for the Borough in April 2011 to work at least thirty-two hours per week. He stated that he received an increase in wages and hours when Appellants were furloughed. Krebs explained that the Mayor was responsible for generating the schedule after the furlough and Appellants were only authorized to work two days a week. Krebs stated that the Mayor met with him to discuss scheduling and advised him that he was being given scheduling preference over Appellants, but did not mention any budget issues. He also stated that Councilman Yelito was present for some scheduling meetings, that they would frequently discuss Krapf, and that they gave Krebs the impression that he would ultimately be hired for a full-time position. (R.R. at 311a, 315a-317a, 322a-37a.)

Susan Solt (Solt) testified that she was the president of the Borough Council from 2001 through 2012 and served on every committee. Solt stated that it was brought to the Borough Council's attention before formulating the 2012 budget that the Borough had insufficient funds and, as such, she voted to furlough Appellants. She explained that the Borough depended on lines of credit and tax anticipation loans to operate so the finance committee suggested making changes to balance the budget. However, Solt conceded that subsequent Borough budgets also included a line of credit and tax anticipation loan similar to those that prompted the furlough. (R.R. at 353a, 357a-59a, 369a-70a.)

Joe Hnat (Hnat) testified that he was a member of the Borough Council from 1998 through December 2012. He stated that the Borough Council voted to furlough three full-time police officers based on information from the finance committee that the Borough did not have sufficient funds to continue operating the

police force in the same capacity. Hnat further testified that he voted to furlough Appellants based on the finance committee's recommendation, but conceded that he did not look at any specific item in the proposed budget to confirm the finance committee's representation. (R.R. at 382a-83a, 385a, 389a, 393a.)

David Yelito (Yelito) testified that he was elected to the Borough Council for a four-year term in January 2010 and confirmed that he served on the finance and police committees during his tenure. He stated that he largely relied on the Borough Secretary when formulating the Borough's budget, but testified that he also considered the Borough's spending habits when formulating the 2012 budget; specifically he stated that the lines of credit and tax anticipation loans were a significant problem and he was concerned with whether the Borough had sufficient funds to balance its budget. Yelito testified that the Borough owed over $300,000.00 and that it had been borrowing money for years from sewer maintenance fees but failed to replace the borrowed monies. He further testified that a previous Borough Council had used a "special formula" line item that indicated that approximately $40,000.00 was available to the Borough; however, Yelito said that he was advised that the monies did not actually exist. Yelito confirmed that he voted to furlough three full-time officers and two other Borough employees, but denied advising Cramer or Krebs that they would eventually be hired as full-time officers. (R.R. at 411a-12a, 417a, 420a-30a, 441a-42a.)

Nancy Lorchak (Lorchak) testified that she served on the Borough Council from 2008 through 2015. Lorchak stated that she served on the finance and police committees during her tenure on the Borough Council. She confirmed that she voted to furlough three full-time police officers in February 2012 based on recommendations from the Borough's attorney and the police committee that the Borough could not afford the proposed contract with the police. Lorchak

11

acknowledged that the Borough had been operating at the same level for the past few years, but stated that the decision to furlough Appellants was motivated by a substantial increase in insurance charges. Lorchak testified that the Borough tried to renegotiate health benefits, but the FOP rejected the Borough's terms because the health benefits were not the same or better than what was offered in the previous contract. She also noted that the FOP did not request arbitration to resolve the contract dispute in late 2011. Lorchak acknowledged that the Borough had given employees raises notwithstanding the Borough's budget concerns. (R.R. at 469a-70a, 473a-75a, 478a, 486a-88a, 494a, 504a.)

Michael Doerr (Doerr) testified that he began serving on the Borough Council in January 2012. He stated that he voted to furlough three full-time officers in February 2012 because Yelito had advised him that the Borough was in financial ruin and would be bankrupt if the furlough was not performed. Doerr acknowledged that he did not review any documentation prior to the vote and relied on what Yelito had told him when he made his vote. (R.R. at 511a-515a.)

Richard Corkery (Corkery) testified that he served as mayor of the Borough from January 2010 until early 2014. He stated that he had no involvement with the police department's schedule prior to the furlough; however, Corkery testified that, after the furlough, he was responsible for scheduling and the only parameters were to schedule the state police for ten shifts a month and the three furloughed officers for thirty-two hours per week. He explained that Yelito gave him the scheduling parameters and noted that he had no conversations with any Borough Council members about the budget prior to the furlough; however, he noted that the Borough Council had advised him that it was going to vote regarding a possible furlough because the Borough was bleeding money and some drastic personnel action had to be taken. Corkery acknowledged that there had been no budget issues during

12

his first two years as mayor and confirmed that he had expressed concerns to Police Chief Delaney about Krapf's attitude. (R.R. at 535a-38a, 542a-44a.)

## Trial Court's Decision

By order dated July 13, 2015, the trial court granted the Borough's motion for summary judgment and dismissed Appellants' complaint. In its opinion, the trial court reasoned that the testimony supporting Appellants' assertion that the Borough acted in bad faith was "speculative, unreliable and formed from personal opinions suggesting bias and prejudice." (Trial court op. at 7.) The trial court rejected the relevant testimony as "not credible" and determined that the "credible evidence establishes that various council members had legitimate concerns that 'there was no money.'" *Id*. Accordingly, the trial court concluded that "the only logical conclusion based on the credible evidence is that the [Appellants] were laid off in good faith . . . ." *Id*. at 8.

## Discussion

On appeal to this Court,[3] Appellants argue that the trial court committed an error of law when it made factual and credibility determinations at the summary judgment stage. In response, the Borough argues the undisputed record evidence indicates that the furlough was due to economic reasons because it realized economic savings and its police department worked less hours after the furlough than before. Additionally, the Borough asserts that this Court should affirm the trial court's order

---

[3] This Court's standard of review of a trial court's order granting summary judgment is de novo and our scope of review is plenary. *Pentlong Corp. v. GLS Capital, Inc.*, 72 A.3d 818, 823 n.6 (Pa. Cmwlth. 2013). The trial court's order will be reversed only if it committed an error of law or an abuse of discretion. *Davis v. Brennan*, 698 A.2d 1382, 1383 n.1 (Pa. Cmwlth. 1997).

13

on alternative grounds because the testimony the trial court deemed not credible contemplates only immaterial facts and is not sufficient to preclude entry of summary judgment.

Pursuant to the Pennsylvania Rules of Civil Procedure, summary judgment is proper when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No.1035.2(1). A party is only entitled to judgment as a matter of law when the entire record establishes that the moving party's right to relief is clear and free from doubt. *Edinger v. Borough of Portland*, 119 A.3d 1111, 1113 n.3 (Pa. Cmwlth. 2015). The court must view the evidence in the light most favorable to the non-moving party and resolve any doubt regarding the existence of a genuine issue of material fact against the moving party. *Royal v. Southeastern Pennsylvania Transportation Authority*, 10 A.3d 927, 929 n.2 (Pa. Cmwlth. 2010). The moving party has the burden of proving the non-existence of any genuine issue of material fact. *O'Rourke v. Department of Corrections*, 730 A.2d 1039, 1041 (Pa. Cmwlth. 1999). For purposes of summary judgment, "a factual issue is considered material if its resolution could affect the outcome of the case under the governing law." *McCarthy v. City of Bethlehem*, 962 A.2d 1276, 1278 (Pa. Cmwlth. 2008) (internal quotation omitted). It is well established that the credibility of testimony is a matter for the fact-finder and cannot be resolved at the summary judgment stage. *Department of Transportation v. UTP Corp.*, 847 A.2d 801, 806 (Pa. Cmwlth. 2004); *see also Nanty-Glo Borough v. American Surety Co.*, 163 A. 523, 524 (Pa. 1932).

Here, the record contains conflicting testimony regarding the Borough's motivation for furloughing the police department. The trial court rejected the testimony supporting Appellants' position as not credible and concluded that "the only logical conclusion *based on the credible evidence* is that the [Appellants] were

14

laid off in good faith . . . ." (Trial court op. at 8) (emphasis added). As noted above, it is well settled that the credibility of testimony is a matter for the fact-finder and cannot be resolved at the summary judgment stage. *UTP Corp*, 847 A.2d at 806. Accordingly, the trial court committed an error of law when it made credibility determinations at the summary judgment stage.

Notwithstanding the trial court's improper credibility determinations, the Borough argues that the trial court's order should be affirmed on alternative grounds because the testimony the trial court deemed not credible was not related to a material fact and the undisputed record evidence indicates that the furlough was due to economic reasons because it realized economic savings and its police department worked less hours after the furlough than before.

Section 1190(d) of the Code states that:

> If, *for reasons of economy or other reasons*, it shall be deemed necessary by any borough to reduce the number of paid employees of the police or fire force, the borough shall furlough the person, including a probationer, last appointed to the respective force. The removal shall be accomplished by furloughing in numerical order commencing with the person last appointed until the reduction shall have been accomplished. In the event the police or fire force shall again be increased, the employees furloughed shall be reinstated in the order of their seniority in the service. This subsection as to reductions in force is not applicable to a chief of police.

8 Pa.C.S. §1190(d) (emphasis added).

This Court has stated that:

> The only limitation imposed on the power of a municipality to act in the reduction of its police civil service work force for economy or other reasons *is that it must act in good faith*. Thus, where there is affirmative evidence of bad faith on the part of municipal officials or where the facts show a patent attempt to avoid or circumvent civil service

15

> positions, our Courts have held a municipality's exercise of this power may be illegal.

*Kraftician v. Borough of Carnegie*, 386 A.2d 1064, 1066 (Pa. Cmwlth. 1978) (emphasis added). To prevail in a challenge to a municipality's reduction of its police force, the challenger must show sufficient evidence of bad faith to rebut the presumption that public officials acted with regularity. *Id.* Absent evidence to the contrary, we must presume that public officials have acted with regularity. *Gabriel v. Trinity Area School District*, 350 A.2d 203, 205 (Pa. Cmwlth. 1976). *Cf. Schauer v. Borough of Whitehall*, 194 A.2d 318, 318 (Pa. 1963) (concluding that evidence supported finding that borough's adoption of ordinance abolishing the chief of police position was not performed in good faith); *Mack v. Hoover*, 20 A.2d 757, 759 (Pa. 1941) (holding that transfer of sanitary inspector to police sergeant for purported economic reasons was an attempt to circumvent civil service laws). Accordingly, whether the Borough acted in good faith when it furloughed Appellants is a material fact because it relates to whether the Borough's exercise of power was lawful.

Here, the record contains testimony challenging whether the Borough acted in good faith when it implemented the furlough. Delaney testified that Krapf had arrested the Mayor prior to his election and had reported Councilman Yelito to the Attorney General's Office for a prior felony conviction. (R.R. at 225a-26a.) Delaney further testified that the Borough's justification that the furlough was due to economic reasons was a façade to terminate Krapf because Delaney had inquired about the budget deficit numerous times but was provided no specific information regarding the Borough's financial status. (R.R. at 219a, 225a-26a.) After the furlough, Delaney was advised to schedule Appellants for a maximum of sixteen hours per week. (R.R. at 215a.) When Delaney failed to comply with the scheduling order, the Mayor and members of the Borough Council advised him that he would be laid off if he did not comply. (R.R. at 212a-17a.) Additionally, after the furlough,

16

the preexisting part-time officers received an increase in wages and worked more hours than before the furlough. (R.R. at 286a, 314a-15a.) Similarly, the record evidence indicates that a tax anticipation loan and line of credit were the bases for the Borough's financial concerns and motivated the furlough; however, the same tax anticipation loan and line of credit were used in the Borough's subsequent budgets. (R.R. at 369a-71a.)

Because the relevant testimony raises a genuine issue of material fact, which cannot be resolved by credibility determinations at the summary judgment stage, the trial court's order is vacated and the matter is remanded for further proceedings consistent with the foregoing opinion.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Wojcik did not participate in this case.
Senior Judge Pellegrini concurs in result only.

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles A. Blesse, Keith A. Krapf,     :
and Todd Weiss,     :
          Appellants     :
     :  No.  1448 C.D. 2015
     v.     :
     :
Borough of Coaldale     :

## ***ORDER***

AND NOW, this 2nd day of May, 2016, the July 13, 2015 order of the Court of Common Pleas of Schuylkill County is vacated and this matter is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge