# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rodney Derrickson,                   :
              Petitioner     :
                                :
           v.                :    No.  467 M.D. 2017
                                :    Submitted: February 3, 2023
Cindy Hays, John Wetzel,      :
            Respondents   :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                      **HONORABLE MICHAEL H. WOJCIK,** Judge
                      **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**       **FILED: February 1, 2024**

Before this Court is Rodney Derrickson's (Derrickson) pro se Second Application for Summary Relief (Second Application) on his Petition for Review (Petition) seeking declaratory and injunctive relief for alleged violations of his First Amendment rights, U.S. Const. amend. I, related to his suspension from an inmate organization at the State Correctional Institution at Forest (SCI-Forest). This Court denied Derrickson's First Application for Summary Relief (First Application) and then-Secretary of Corrections John Wetzel's (Secretary Wetzel) Motion for Judgment on the Pleadings because issues of material fact existed. *Derrickson v. Hays* (Pa. Cmwlth., No. 467 M.D. 2017, filed Feb. 8, 2019) (*Derrickson I*).[1]  In his

---

[1] Derrickson originally named Secretary Wetzel and Cindy Hays (Hays) as respondents. Secretary Wetzel and Hays filed preliminary objections, which we sustained in part and overruled in part. In doing so, we dismissed the action against Hays for lack of original jurisdiction because she is not a statewide officer. *Derrickson v. Hays* (Pa. Cmwlth., No. 467 M.D. 2017, filed Apr. 3, 2018), slip op. at 3 ("In his response to the preliminary objections and brief to this Court, Derrickson concede[d] that Hays is not a statewide officer and should be dismissed[.]").

Second Application, Derrickson argues additional discovery resolved any disputed facts and that his right to relief is now clear. For nearly identical reasons as in *Derrickson I*, we deny Derrickson's Second Application.

## I. BACKGROUND

This Court previously summarized the facts as follows:

Derrickson served as vice president of Hope for Change (HFC), an inmate organization at SCI-Forest. . . . On August 1, 2017, Activities Manager Cindy Hays (Hays), in the role of HFC's staff coordinator, informed HFC's [E]xecutive [B]oard [(HFC Board)] that [Fight for Lifers West (FFLW)], an outside organization, had contacted SCI-Forest's superintendent [via email] about [participating in a commutation information day]. Derrickson then informed Hays that he had corresponded with [FFLW] previously and instructed the organization to contact the superintendent to ask about working with HFC. . . . Hays told Derrickson that inmates are not permitted to write correspondence to outside organizations without prior approval. . . . Hays then informed the HFC [E]xecutive [B]oard that the superintendent wanted the HFC [E]xecutive [B]oard to take action relative to Derrickson's correspondence. The [E]xecutive [B]oard voted to suspend Derrickson from the position of vice president for five months. . . .

*Derrickson I*, slip op. at 3 (internal citations omitted).

Thereafter, Derrickson filed his Petition alleging violation of his First Amendment rights. Therein, he sought a declaration of his right "to communicate with outside prison reform organizations/groups," an order declaring any policy that prohibits such to be unconstitutional, and an injunction preventing further interference with that right. (Petition, Wherefore Clause ¶¶ 1-3.)

After this Court issued its decision in *Derrickson I*, the parties engaged in discovery, and Derrickson was deposed. (Second Application ¶¶ 13-15.) Derrickson avers in his Second Application that the discovery resolved any factual

2

disputes and that the evidence shows he is entitled to judgment in his favor as a matter of law. In support of his Second Application, Derrickson attaches a transcript of his deposition, wherein Derrickson stated he wrote to FFLW numerous times in his personal capacity, and in December 2016 he wrote to FFLW in his capacity as a representative of HFC to invite it to a commutation information day, which was approved by Hays. (Derrickson's Deposition (Dep.) at 26.)[2] Derrickson testified the letter that prompted FFLW to reach out to the superintendent via email was written in his personal capacity and not on behalf of HFC, but he did not have copies of the letters sent to FFLW either in his personal capacity or in a representative capacity. (*Id*. at 34-37.) Derrickson also attaches to his brief affidavits of Anthony Romanelli, HFC's Secretary, and Kenneth Mueses, HFC's President, claiming Hays told the HFC Board that the superintendent wanted Derrickson punished. Also, appended to his Second Application is an email produced during discovery from Patrick Stewart of FFLW to the superintendent dated July 24, 2017, which states that FFLW "[was] collaborating with [HFC] . . . to create a commutation information day[,]" and that HFC "reached out to" FFLW. (Second Application, Appendix B.)

Derrickson seeks summary relief in the forms of: (1) a declaration that Derrickson "has a First Amendment Right to communicate by mail with outside prison reform organizations/groups as provided by law[;]" (2) a declaration that "any policy and/or rule prohibiting [Derrickson] from sending outgoing mail to any prisoner reform organization[]/group[] is unconstitutional[] and violates the First Amendment[;]" (3) an injunction preventing Secretary Wetzel and other prison staff from interfering with Derrickson's First Amendment right to communicate with outside organizations/groups via mail, and that he not be retaliated against, harassed,

---

[2] Derrickson's deposition transcript is appended to his Second Application as Appendix A.

or sanctioned for engaging in any constitutionally protected conduct; and (4) other such relief that this Court deems appropriate. (Second Application, Wherefore Clause ¶¶ 1-4.)

Secretary Wetzel opposes the Second Application, arguing Derrickson's right to relief is not clear and there are genuine issues of material fact that prevent entry of summary relief. In opposition to the Second Application, Secretary Wetzel attaches to his brief copies of Derrickson's grievances, an unsworn declaration by Hays wherein she indicates, *inter alia*, any correspondence by HFC to outside groups or individuals had to be approved by her and the alleged letter Derrickson sent FFLW was not approved, and an unsworn declaration by Ben Fiscus, Correction Activities Specialist at SCI-Forest and Staff Liaison for HFC, stating HFC's proposal for a commutation seminar had been denied by the administration and Hays did not indicate Derrickson was to be suspended, as alleged. Secretary Wetzel also produced draft letters from Derrickson on behalf of HFC that had not been approved by the administration, a copy of HFC's proposal for a commutation program, which was disapproved, and minutes from HFC's board meetings and its bylaws.

Derrickson filed a reply brief to which he attached an email exchange between Hays and the superintendent, which he contends supports his claims, as well as correspondence between Derrickson from Fight for Lifers.[3] As the Second Application has been fully briefed by the parties, it is ripe for disposition.

## II. DISCUSSION

Preliminarily, we note an application for summary relief is granted under Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b), "where no

---

[3] Fight for Lifers and FFLW appear to be two separate entities.

4

material fact is in dispute and the right of the moving party to relief is clear." *Brown v. Pa. Dep't of Corr.*, 932 A.2d 316, 318 (Pa. Cmwlth. 2007). An application for summary relief is denied where the material facts are in dispute, or it is unclear whether the applicant is entitled to judgment as a matter of law. *Jackson v. Commonwealth*, 143 A.3d 468, 472 n.6 (Pa. Cmwlth. 2016). For summary relief, the record is the same as the record for summary judgment, which includes pleadings, depositions, affidavits, answers to interrogatories, and reports signed by expert witnesses. *Rivera v. Pa. State Police*, 255 A.3d 677, 681 (Pa. Cmwlth. 2021). However, "[i]t is well established that testimonial affidavits . . . , even if not contradicted, [are] insufficient to establish the absence of a genuine issue of material fact because the credibility of the testimony is a matter for the factfinder." *Id.* (quoting *Dep't of Transp. v. UTP Corp.*, 847 A.2d 801, 806 (Pa. Cmwlth. 2004)). When deciding on a summary relief application, "we review the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of disputed material fact against the moving party." *Id.* (quoting *Marcellus Shale Coal. v. Dep't of Env't Prot.*, 216 A.3d 448, 458 (Pa. Cmwlth. 2019)).

Derrickson contends he has a clear right to relief on his claim for infringement of his First Amendment right because Secretary Wetzel agrees Derrickson has a right to communicate with the outside public by mail, and Derrickson contends that he did not communicate with FFLW on behalf of HFC without prior approval. (Derrickson's Brief (Br.) at 10, 13.) Derrickson further contends he is entitled to summary relief on his declaratory judgment claim because an actual controversy exists over whether Derrickson has a right to personally communicate with the outside public. (*Id.* at 15-16.) Derrickson also avers he is entitled to summary relief on his claim for injunctive relief because he is now hesitant to communicate with

outside organizations due to fear of being suspended. (*Id*. at 17-18.) Derrickson adds that Hays "placed a very hideous stain on [his] character inside the [HFC] organization, and his status as a positive role model within the organization." (*Id*. at 17.)

Secretary Wetzel responds that Derrickson is not entitled to summary relief because his right to relief is not clear and material facts are still in dispute. (Secretary Wetzel's Br. at 16, 20-21, 23.) Further, Secretary Wetzel contends that the requirement that an inmate in an organization must seek approval from the staff coordinator before communicating with an outside group is consistent with Department of Corrections (Department) policy. (*Id*. at 18-19.) Relating to Derrickson's argument that he is entitled to declaratory relief, Secretary Wetzel argues "[t]he situation in this matter is not uncertain, it is not direct and present, and there is no actual controversy because [Secretary Wetzel] admitted that [Derrickson] has First Amendment rights to communicate by mail." (*Id*. at 13.) Relating to Derrickson's argument that he is entitled to injunctive relief, Secretary Wetzel argues Derrickson has not shown a likelihood of future harm, and any future injury is speculative. (*Id*. at 14.) Secretary Wetzel also contends Derrickson did not specifically name Secretary Wetzel in the filing of his grievance, Secretary Wetzel was not personally involved in Derrickson's suspension from the HFC Board, and Derrickson is unable to make a valid claim of respondeat superior liability.[4] (*Id*. at 9-12.)

---

[4] Secretary Wetzel argues Derrickson's claims amount to prison conditions litigation and, thus, limitations on Derrickson's remedies should apply, Derrickson was required to exhaust his administrative remedies, and Derrickson must have listed Secretary Wetzel on his grievances. (Secretary Wetzel's Br. at 6-7.) As stated previously, this Court has original jurisdiction over Derrickson's claim because "it is a challenge regarding alleged violations of his specific constitutional rights under the First Amendment. . . . Although Derrickson did initiate inmate **(Footnote continued on next page…)**

Regarding Derrickson's First Amendment argument, our previous decision is instructive:

> In analyzing First Amendment claims by inmates, we look first to see whether the inmate has alleged an infringement of a constitutional right. If so, we then determine whether the "infringement rises to the level of a constitutional violation, given the" unique standard applied to inmates. *Brown*, 932 A.2d at 318 (internal quotation marks and citation omitted). Simply because a "legal mail policy burdens inmates' First Amendment rights does not compel a conclusion that the policy is unconstitutional." *Id*. at 319. Because inmates maintain their First Amendment rights to correspond via mail, prison officials cannot "censor inmate correspondence simply to eliminate unflattering or unwelcome opinions," unless that censorship furthers an interest such as security or order. *Brooks v. Andolina*, 826 F.2d 1266, 1268 (3d Cir. 1987) (internal quotation marks and citation omitted). Therefore, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Salley*, 482 U.S. 78, 89 (1987). For policies restricting an inmate's outgoing mail, we apply a test to determine "whether the regulation furthers an important or substantial government interest unrelated to the suppression of expression and whether the regulation is no more intrusive than is necessary to protect that interest." *Hamm v. Rendell*, 166 F. App'x[] 599, 603 (3d Cir. 2006) (citing *Procunier v. Martinez*, 416 U.S. 369 (1974) (overruled in part on other grounds)[]). In analyzing whether there is a legitimate penological interest, we give substantial deference to prison administrators and officials. *Bussinger v. Dep't of Corr.*, 29 A.3d 79, 84 (Pa. Cmwlth. 2011), *aff'd*, 65 A.3d 289 (Pa. 2013). However, there has been less deference afforded to prison officials with regard to restrictions on outgoing, as compared to incoming, mail because the security concerns arising out of outgoing mail "are of a categorically lesser magnitude." *Castle v. Clymer*, 15 F. Supp. 2d 640, 661 (E.D. Pa. 1998) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). This Court has recognized various legitimate penological interests, including:

---

grievances prior to this litigation, which were unsuccessful, Derrickson does not challenge the outcome of those inmate grievances now." *Derrickson I*, slip op. at 6.

7

> (a) maintaining internal security for the protection of prison employers, prisoners, and visitors; (b) deterring the use of drugs and alcohol in prisons; (c) preventing future crime; (d) the rehabilitation of inmates; (e) fair and appropriate treatment among inmates; (f) curbing sexually[ ]offensive behavior in the prison; and (g) controlling/eliminating the flow of contraband in prisons.

*Bussinger*, 29 A.3d at 87. Keeping these standards in mind, we look to the specific allegations of Derrickson's claim.

Derrickson and Secretary Wetzel agree that Derrickson has a constitutional right to communicate via mail. . . . However, there are further disputes of material fact between the parties that preclude us from determining whether there is an infringement of that right, and, if so, whether the infringement amounts to a constitutional violation. The parties disagree about almost all aspects of the disputed correspondence including its content, the capacity in which Derrickson sent it, and whether it was previously approved. Derrickson contends that he corresponded with [FFLW] in a personal capacity, and not as a representative of HFC. . . . Derrickson also provides a sworn affidavit by . . . Mueses [], in which Mueses states that Derrickson was not required to obtain executive board approval "to respond to any personal mail he personally received from outside organizations." . . . . Secretary Wetzel does not specifically respond to this; however, his argument hinges upon the contention that Derrickson ran afoul of the Department's policy because he sent the correspondence on behalf of the organization. Neither party has produced a copy of Derrickson's letter to [FFLW].

. . . . It is also unclear whether Derrickson's correspondence [in December 2016] was, in fact, approved in the first place. . . . Whether the communication was approved, as Derrickson contends, goes directly to questions relating to the applicability of the policy at issue and whether it infringed upon Derrickson's rights. . . .

*Derrickson I*, slip op. at 7-10.

Many of the same factual disputes in *Derrickson I* remain disputed here. For example, Derrickson testified he wrote a letter to FFLW in his personal capacity and

8

that when he did write to FFLW in a representative capacity on behalf of HFC, Hays approved of that letter. (Derrickson's Dep. at 26-28.) However, in Hays's Unsworn Declaration, she explains that she had no record of Derrickson seeking or receiving prior approval to invite FFLW to communicate with the superintendent about the commutation seminar. (Hays's Unsworn Declaration (Decl.) ¶ 33.) Further, Hays explains that FFLW is separate and distinct from the group Fight for Life, a 26 U.S.C. § 501(c)(3) charity, and she would have only approved letters to be sent to Fight for Life because FFLW is not a registered charity and little information was known about FFLW. (*Id*. ¶¶ 30-31.) Hays also states that she "never informed [] Derrickson that he personally could not communicate with outside groups about personal matters." (*Id*. ¶ 13.) When correspondence was to be mailed in a representative capacity, Hays stated "[she] would sign [her] name in the approval box and initial the bottom of the correspondence pages. . . . If [she] was not approving correspondence to be mailed, [she] would not sign or place [her] initials on the correspondence." (*Id*. ¶¶ 15-16.) The draft letters written by Derrickson on behalf of HFC that are attached to Secretary Wetzel's Brief lack the signature or initials of Hays indicating approval. (*See* Secretary Wetzel's Br. Ex. E.) "The existence of such disputed material facts prevents us from" finding Derrickson has a clear right to relief for infringement on his First Amendment Rights. *Derrickson I*, slip op. at 13.

Regarding Derrickson's claims that he is entitled to declaratory and injunctive relief, our previous decision continues to be instructive:

> This Court has "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 7532 of the Declaratory Judgments Act, 42 Pa. C.S. § 7532. Derrickson seeks a declaration that he has a First Amendment right to communicate with outside organizations and that a policy restricting that right is

9

unconstitutional. As established above, while Derrickson does have a right to communicate via the mail while he is incarcerated, subject to restrictions, *Brown*, 932 A.2d at 319, it is unclear . . . whether Derrickson has established a violation of that right. Because there are remaining questions of fact relevant to Derrickson's letter . . . we cannot assess whether Derrickson has a right to declaratory relief.

Derrickson has also requested an injunction. In order to establish a right to permanent injunctive relief, petitioners must show "(1) the right to relief is clear, (2) the injunction is necessary to avoid an injury that cannot be compensated by damages, and (3) that greater injury will result if the court does not grant the injunction than if it does." *Mazin v. Bureau of Prof. & Occupational Affairs*, 950 A.2d 382, 389 (Pa. Cmwlth. 2008).

. . . . Not only is Derrickson's right to relief uncertain, but there remains a dispute about the injury Derrickson suffered.

*Derrickson I*, slip op. at 13-14.

Again, many of the same factual disputes in *Derrickson I* arise here. Derrickson argues the HFC Board suspended Derrickson because "of what [] Hays said to [it]." (Derrickson's Dep. at 20.) Conversely, Hays's Unsworn Declaration states that she did not "communicate with the Executive Board [of HFC] that [] Derrickson was to be suspended." (Hays's Unsworn Decl. ¶ 36.) Hays further declared that she had no personal involvement with Derrickson's suspension and that HFC's Board disciplined Derrickson according to HFC's bylaws. (*Id.* ¶¶ 37, 43-44.) In Fiscus's Unsworn Declaration, he states "[a]t no time did [] Hays communicate with the [HFC] Board that [] Derrickson was to be suspended." (Fiscus's Unsworn Decl. ¶ 12.) The emails provided by Secretary Wetzel further show that Hays directed the HFC Board to decide the consequences of Derrickson's actions. (Derrickson's Reply Br., Appendix A). Also, the minutes of the HFC Board meetings, which are attached to Secretary Wetzel's Brief, regarding Derrickson's mail and his related punishment, lack an indication that Hays directed the HFC

10

Board to suspend Derrickson. (*See* Secretary Wetzel's Br. Exs. G-H.) "The resolution of these factual disputes is necessary in order for us to determine whether there may be a right to injunctive relief. Without these necessary facts established, we are constrained to" conclude Derrickson does not have a clear right to relief. *Derrickson I*, slip op. at 14.[5]

## III. CONCLUSION

Based on the disputes of material fact, we are precluded from applying a constitutional analysis or finding that Derrickson has a clear right to relief for infringement of his First Amendment rights. For the same reasons, we are also precluded from issuing a declaratory judgment or an injunction. Accordingly, we deny Derrickson's Second Application.

_____
**RENÉE COHN JUBELIRER,** President Judge

---

[5] Due to our disposition, we need not address the remainder of Secretary Wetzel's arguments.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rodney Derrickson,               :
            Petitioner     :
                            :
        v.                :   No.  467 M.D. 2017
                            :
Cindy Hays, John Wetzel,    :
           Respondents  :

## O R D E R

NOW, February 1, 2024, the Second Application for Summary Relief filed by Rodney Derrickson is **DENIED**.

 

 

_____
**RENÉE COHN JUBELIRER,** President Judge