# Breisch et al., Appellants, v. Locust Mountain Coal Co. et al.

*Mines and mining—Highways—Removal of coal under highway
—Right of abutting owner—Nuisance—Agreement with supervis-
ors—Attorney-at-law—Public rights—Nonuser—Commonwealth—
Laches—Equity—Practice—Injunction — Mandatory — Withhold-
ing writ—Act of May 5, 1911, P. L. 123.*

1. An owner of land abutting on a highway may use the land
for his own purposes in any way not inconsistent with the public
easement, and is entitled to all profit and advantage that may be
derived therefrom.

2. An abutting owner owning coal under a public highway has
the right to mine and remove it, but the removal must be done in
such manner as not to injure the surface of the highway, or create
a condition whereby injury may follow later.

3. A coal company acquired no right to interfere with the sur-
face of a public highway for the purpose of mining coal, under an
agreement with the highway supervisors or their attorney that
another road should be provided by the company, inasmuch as an
encroachment or obstruction was a nuisance per se which could
not be legalized unless the highway was vacated in the manner
provided by law; nor can laches be imputed to the Commonwealth
under the circumstances of the case; and occupancy of the prop-
erty inconsistent with the public rights, is a public nuisance; and
no length of time will legalize a public nuisance.

4. To permit such an evasion of a legislative mandate as to
highways would be to create an easy method to have important
highways changed to suit the convenience of a few persons with-
out notice to others who might be injured thereby.

5. A public highway is the property of the people of the whole
State and the public rights cannot be lost by nonuser or by munici-
pal action not expressly authorized by law.

6. Where a coal company has wrongfully mined under a public
highway, the supervisors as municipal authorities are the proper
officers to ask for a compulsory mandate to redress the injury.

7. Under the circumstances of this case, plaintiffs lost no right
in the prosecution of this litigation. They acted under what they
believed to be the lawful order of the court; but defendants will
not be heard to complain of this, as they have not met the obliga-
tion assumed in the unauthorized agreement and order.

8. Where there has been an invasion of public right by the use, for private purposes, of that which belongs to the public, whether the injury be great or small, it is the continuing deprivation of the right which gives a cause for equitable intervention to prevent the creation of the continuance of such wrongful exercise. This should be recognized for a broader reason where the injury is substantial and material, calculated not only to interfere with the right and comfort of the public as such, but possibly to the damage of individuals. So it has been held that injunctions to restrain encroachments on highways, though they should be granted with care, will, when public rights are invaded, be granted. In such case no question of the amount of damages is raised, but simply the one of invasion of a right.

9. Where, on appeal from a final decree dismissing a bill in equity filed to restrain a coal company from mining coal under a public highway, it appears the court below had continued a preliminary injunction because of proceedings to open a new road which the company had agreed to, the Supreme Court in reversing the decree will direct a mandatory injunction to be issued, but will further direct that the writ shall be withheld for a period of six months pending which time the company may institute proper proceedings to vacate the road or to change the location thereof; at a cost not to exceed $300, as provided by the Act of May 5, 1911, P. L. 123, and that if the proceedings are prosecuted with due vigor, but are uncompleted at the end of six months, the court below in its sound discretion may grant a further extension of time.

Argued February 17, 1920. Appeal, No. 289, Jan. T., 1919, by plaintiffs, from decree of C. P. Schuylkill Co., in equity, Nov. T., 1913, No. 3, refusing injunction in the case of Emanuel Breisch et al., supervisors of Union Township, Schuylkill Co., Pennsylvania, v. Locust Mountain Coal Co. et al. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Reversed.

Bill in equity to enjoin defendant from excavating coal in highway. Before BERGER, J.

Statement of facts by Mr. Justice KEPHART: Krebs Road in Union Township was a much traveled public highway from the Borough of Shenandoah to Krebs

Station, near Ringtown, Schuylkill County. Along both sides and under this road the Locust Mountain Coal Company owns the coal; under the road and on either side it consists of three veins, the uppermost 25 feet thick, the next two seven feet thick. It runs near the surface and can be removed only by stripping, the usual method of mining being impossible by reason of the pitch of the veins and the stratification between them in this locality. To remove the coal, a partial destruction of the road by the stripping operation was necessary, and defendants, after consultation with the several supervisors, built a new road, making a change in the route from Krebs Station to Shenandoah, increasing the distance a little over a half mile. Thereafter, defendants excavated across Krebs Road to a depth of 14 feet for about 50 feet; whereupon, in 1913, the Union Township supervisors filed this bill, praying for a mandatory injunction to compel the restoration of the public road to the condition that existed before the excavations and obstructions were made. On October 27th the preliminary injunction then granted was continued because of the proceedings to open a new road, and, upon agreement of defendants to pay the cost thereof, the injunction was so modified as to permit the company to extend the work of excavation north and south. The basis of the order was an agreement signed by the attorneys in the case, and then defendants continued their excavation, stripping along the Krebs Road for a distance of 550 feet to a depth of about 60 feet, in the Townships of Union and West Mahoning. The proceedings to vacate and supply the whole or a part of the Krebs Road, as instituted by the parties, were set aside; the one instituted by defendants by the Superior Court: see Krebs Road, 64 Pa. Superior Ct. 492.

There is nothing in the record showing any further proceedings to legally vacate this highway. The complainants' successors in office again pressed for the mandatory injunction, but, because of the changed condi-

tions of the parties, the apparent reliance and acquiescence for many years by plaintiffs on the agreement of defendants and the work carried on in accordance therewith, with the laches of plaintiffs, the court below refused the mandatory injunction, retaining the bill that defendants might carry out the agreement of October 27th. Hence this appeal. Were complainants entitled to a mandatory injunction as prayed for?

The court refused an injunction but retained the bill until the parties should carry out the agreement to supply a new road.. Plaintiffs appealed.

*Errors assigned* were overruling exceptions to findings, and decree of court, quoting them.

*E. P. Leuschner,* for appellants.—It is competent for a municipal corporation to prosecute a bill in equity, where the injury is an immediate one to the property of the corporation, as obstructions to a public highway in the municipality common to the corporators, and the citizens of the Commonwealth generally: Com. v. Long, 1 Parsons 143; Harvey v. L. B. R. R., 47 Pa. 428; Mint Realty Co. v. Wanamaker, 231 Pa. 277.

No usage, however long continued, will justify an encroachment great or small on a public highway: Appeal of Phila., 78 Pa. 33.

Any obstruction to the free use of a highway is a nuisance: Com. v. McNaugher, 131 Pa. 55; Hauck v. Tidewater P. L. Co., 153 Pa. 366; Penna. R. R. Co.'s App., 115 Pa. 514; Com. v. Kembel, 30 Pa. Superior Ct. 199.

*H. S. Drinker, Jr.,* with him *D. W. Kaercher* and *M. M. Burke,* for appellee.

OPINION BY MR. JUSTICE KEPHART, May 17, 1920:

It is admitted defendants are the owners in fee of the coal underlying and on either side of the public highway, as it affects the present case. There is nothing to

show how Krebs Road originally became a public high·
way. If, in the original taking, the right of property in
any aspect had been injuriously affected, the owner
would have been entitled to damages; but, as the own·
ership of the coal is not in dispute, it is clear that when
the road was laid out the owner had full dominion and
control over the coal with the right of an absolute owner
to it, subject, however, to the easement in favor of the
public. He has the right to mine and remove it, but
the removal must be done in such manner as not to in-
jure the surface of the highway, or create a condition
whereby injury may follow later. The servient estate
must always be in such condition that the road may be
continued as a highway for the traveling public in the
future. From the undisputed facts this servient estate
owed to the road above such support as will at all times
preserve and keep it from subsiding.

An abutting owner may use the land (the surface) for
his own purposes in any way not inconsistent with the
public easement and is entitled to all profit and advan-
tage that may be derived therefrom: 13 R. C. L., sec.
107, p. 121. "The rights and title of an abutting owner
......are subject......to the easement and servitude
in favor of the public, and to the right of the public
authorities to occupy the space above and below the sur-
face of the way for any purpose within the scope of pub-
lic uses to which highways may be put": 13 R. C. L., sec.
108, p. 123. But above and beyond this reasonable use
of the public, the owner undoubtedly retains the right
to use his land; and so it has been held, where one owns
the fee in the minerals under the surface of the highway,
and the mines on the surface adjacent thereto, they may
work such mines, but must do so in such way as not to
cause the road to subside: 17 Eng. Ruling Cases, p. 554.

The coal under the highway could not be removed
without disturbing the surface; to mine it the surface
itself, which includes the highway, must be physically
displaced, stripped so that the coal might be taken out.

The company's right to do this was subordinate to the right of the public to the highway. This use, encroachment or obstruction (stripping) by the company was a nuisance per se, which could not be legalized unless the highway ceased to exist as such; in that event, the land reverts to the owners and its use is no longer a public one.

To cause the "land" to revert, the road must be vacated in the manner provided by law, and, as public highways are within the control of the Commonwealth, the statutory directions for their creation and abolishment must be followed. When counsel in this case agreed that the road should be vacated, thus permitting the coal company to continue the nuisance and the public to be deprived of the use of the highway for travel, they clearly exceeded any authority they had as attorneys and they attempted to do something which even the supervisors had no power to do; and the same may be said as to supplying the road vacated. To permit such an evasion of a legislative mandate as to highways would be to create an easy method to have important highways changed to suit the convenience of a few persons without notice to others interested who might be injured thereby. The Act of 1836 or 1911 should have been invoked.

The supervisors, as municipal authorities, were proper officers to ask for a compulsory mandate to redress the injury. It should not have been denied, as a clear legal right existed. Where there has been an invasion of a public right by the use, for private purposes, of that which belongs to the public, whether the injury be great or small, it is the continuing deprivation of that right which gives cause for equitable intervention to prevent the creation or the continuance of such wrongful exercise. This should be recognized for a broader reason where the injury is substantial and material, calculated not only to interfere with the right and comfort of the public as such, but possibly to the damage of individu-

als. So it has been held that injunctions to restrain encroachments on highways, though they should be granted with care, will, when public rights are invaded, be granted. In such case no question of the amount of damages is raised, but simply the one of the invasion of a right: Reimer's App., 100 Pa. 182, 187. A nuisance per se, when public in its character, may, upon information by the attorney general, or at the suit of a municipality, be enjoined: Mint Realty Co. v. Wanamaker, 231 Pa. 277, 279.

The defendants did not acquire any right to excavate the Krebs Road for the purpose of their stripping operation because of any consent the supervisors of the township might have given, official or otherwise. In Pennsylvania, a highway is the property of the people,— not of a particular district, but of the whole State,— and when a public right has been acquired, it cannot be lost by nonuser or by municipal action not expressly authorized by law. Any occupation of the property inconsistent with the public right is a nuisance, and no length of time will legalize a public nuisance: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318. While laches may be imputed to the Commonwealth, or its representatives, it is done only in rare cases, as stated by our present Chief Justice in Bradford v. N. Y. & Penna. Tel. & Teleg. Co., 206 Pa. 582. Under the circumstances of this case, appellants lost no right in the prosecution of this litigation. They acted under what they believed to be lawful orders of the court; but defendants will not be heard to complain of this, as they have not met the obligation assumed in the unauthorized agreement and order.

The decree of the court below is reversed and a mandatory injunction is directed to issue as prayed for, and, owing to the peculiar circumstances caused by the orders of the first judge who heard the case, the issuance of the writ to be withheld for a period of six months, pending which time appellees may institute proper pro-

ceedings to have Krebs Road vacated and supplied, if it is thought proper so to do; or within which time the parties may, under the Act of 1911, change the location of the road as therein provided, on the conditions stated in the act, that the cost and expense should not exceed the sum of $300. This would not limit the amount respondents may decide to pay in order to accomplish the result. If the proceedings as instituted are prosecuted with due vigor, but are uncompleted at the end of the six months, the court below, in its sound discretion, may grant a further extension of time.

The decree is reversed at the cost of the appellees.