# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Samuel R. Basinger, Dawn E. Basinger, :
Ryan Bissett and Dawnette Louise :
Bissett, his wife, and Benny D. Basinger :
                        :
        v. :
                        :
Russell Adamson and Kimberly :
Adamson, his wife, and :
Morgan Township :
                        :
Appeal of: Russell Adamson and :   No. 293 C.D. 2022
Kimberly Adamson, his wife :
                        :
Samuel R. Basinger, Dawn E. Basinger, :
Ryan Bissett and Dawnette Louise :
Bissett, his wife, and Benny D. Basinger :
                        :
        v. :
                        :
Russell Adamson and Kimberly :
Adamson, his wife, and :
Morgan Township :
                        :
Appeal of: Samuel R. Basinger, :
Dawn E. Basinger, Ryan Bissett, :
Dawnette Louise Bissett, his wife, and :   No. 294 C.D. 2022
Benny D. Basinger :   Argued: May 8, 2023


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY                              FILED: June 2, 2023


        Designated Appellants Samuel R. Basinger (Sam Basinger), Dawn E.

Basinger (Dawn Basinger), Ryan Bissett and Dawnette Louise Bissett, his wife (the

Bissetts), and Benny D. Basinger (Benny Basinger) (collectively, Appellants), and

Designated Appellees Russell Adamson and Kimberly Adamson (collectively, Appellees) cross-appeal from the Greene County (County) Common Pleas Court's (trial court) October 12, 2021 memorandum and order (October 12 Order),[1] and the trial court's November 2, 2021 order denying reconsideration.[2]  In its October 12 Order, the trial court determined that old Poverty Run Road, also known as Old T-568 (the Road), a road adjacent to Appellants' properties, was no longer a public road.  Accordingly, the trial court held that Appellants could continue to use the portion of the Road adjacent to their properties as a private roadway, but could use the portion of the Road adjacent to Appellees' property only if Morgan Township (Township) denied Appellants a driveway permit for alternate access.

There are four issues before this Court: whether the trial court erred (1) by concluding that the Township had vacated the Road by abandoning it and, therefore, it was no longer a public road; (2) by finding that the Road could become an easement by necessity available to Appellants if the Township refused to issue driveway permits from Woodies Road, another road adjacent to Appellants' properties; (3) by failing to find that, pursuant to The Second Class Township Code (Code),[3] when a township closes or abandons a public road, a private 25-foot-wide road is created for all property owners through or along which it passes; and (4) by

---

[1] The October 12 Order was docketed on October 13, 2021.

[2] [A]n order denying reconsideration of a final order is not an appealable order."  *Young v. Est. of Young*, 138 A.3d 78, 84 (Pa. Cmwlth. 2016); *see also City of Phila. v. Frempong*, 865 A.2d 314, 318 (Pa. Cmwlth. 2005).  Thus, this Court shall not address the parties' challenges to the trial court's November 2, 2021 order.

[3] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701.  Section 2304(a) of the Code, added by Section 1 of the Act of November 9, 1995, P.L. 350, *inter alia*, empowers township boards of supervisors to "by ordinance enact, ordain, survey, lay out, open, widen, straighten, vacate[,] and relay all roads and bridges and parts thereof which are located wholly or partially within the township."  53 P.S. § 67304(a).

2

holding that Benny Basinger had a lifetime license to use the Road.[4]  After review, this Court reverses.

## Background

In 1981, the Road was identified in the Township's Hefferin subdivision (Subdivision) plan.  The Subdivision was created from 89.224 acres of land and consisted of 8 lots with differing acreage.  The Subdivision plan identified the Road as *Old T-568*, then known as Poverty Run Road.  *See* Reproduced Record (R.R.) at 99a.  It also identified another road, "T-568[,]" also known as Woodies Road, which branched off from the Road to the north and east.  Currently, the Road and Woodies Road split in a rough "Y" formation, whereby the Road continues for a short way past the homes of Appellants and Appellees, while Woodies Road continues to where the Road used to connect to Piper Ridge Road (Route T-623) to the north.

The Bissetts own tax map parcel 17-02-124-C, a 38.86-acre parcel designated as Subdivision Lot # 2.  Dawn Basinger owns tax map parcel 17-02-124-D, a 3.105-acre parcel designated as Subdivision Lot # 7.  Sam Basinger owns tax map parcel 17-02-124-B, a 1.821-acre parcel of land that is not part of the Subdivision, but the Road is its western boundary.  Benny Basinger lives on tax map parcel 17-02-124-B, which is currently owned by Sam Basinger.  At one time, Benny Basinger owned tax map parcels 17-02-124-B, 17-02-124-C, and 17-02-124-D, with all three parcels coming from a common grantor.

Appellees own tax map parcel 17-02-125, which is not part of the Subdivision and does not have a common grantor with Appellants' parcels.  The

---

[4] Essentially, Appellants presented the first three issues in their Statement of Questions Involved, *see* Appellants' Br. at 4; and Appellees presented the second and fourth issues in their Counter Statement of the Questions Involved.  *See* Appellees' Br. at 2.

Road enters into Appellees' parcel. All three Appellants' parcels are bounded on the east by Woodies Road.

By April 25, 2019 letter (April 25 Letter), Appellees, through their counsel Timothy N. Logan, Esquire (Appellees' Counsel), notified Appellants that the Road was no longer public, and that Appellants did not have a right-of-way along the Road across Appellees' property to reach their properties.[5] In the April 25 Letter, Appellees' Counsel stated:

> Please be advised that the undersigned represents [Appellees] in regard to their property adjacent to your property. As you may be aware, the driveway to [][Appellees'] home **used to be a [T]ownship road**. When the road was moved many years ago, the old road continued to be used by [Appellees'] predecessor. However, the [R]oad is **no longer a public road**. It is understood that you are the owner of the 1.821[-]acre parcel identified as 17-02-124-B. It is also understood that your father, Ben[ny] Basinger, was granted a license to use the driveway to his residence, even though there was access directly from Woodies Road. Said license is personal to your father and cannot be conveyed to other property owners.
>
> [] [Appellees] are willing to permit the use [of] their driveway to your residence as long as Ben[ny Basinger] resides on the property. Said access will cease once your father dies or is no longer residing on the property. You will need to make provision for access directly from Woodies Road at that time.

R.R. at 98a (emphasis added).

---

[5] The April 25 Letter was not addressed to Benny Basinger because Benny Basinger had executed an agreement with Appellees' predecessors-in-title, granting him permission to enter the Road for his lifetime.

4

## Facts

On July 10, 2019, Appellants filed a declaratory judgment action in the trial court. On July 31, 2019, Appellees filed preliminary objections to Appellants' complaint alleging that Appellants had failed to join the Township as an indispensable party. On August 29, 2019, Appellants filed an amended complaint naming Appellees and the Township as parties, and seeking a declaratory judgment against Appellees and the Township and a permanent injunction against the Township. Specifically, Appellants requested a declaration from the trial court that the Road is a Township public road, and that the Township is required to maintain and repair it. Further, Appellants asked the trial court to prevent Appellees from restricting Appellants' access to the Road and to find that an easement by implication existed over the Road.

The trial court held a hearing on June 7, 2021. Appellants presented the testimony of Township Supervisor Shirl Barnhart (Supervisor Barnhart), Ryan Bissett, Sam Basinger, Russell Adamson, and Benny Basinger. Russell Adamson also testified on Appellees' behalf. **All parties agreed that the Road had been a public road at one point in time**.

Supervisor Barnhart testified that he had been employed by the Township since approximately 1976, he was on the Township road crew from 1976 to 1978, as well as from 1983 to 1987, and he had been a Township Supervisor since 1990. Supervisor Barnhart stated that the Township did not maintain or repair the Road during his employment. However, he clarified that, upon request, the Township would spread cinders on the Road when conditions were icy. Supervisor Barnhart related that the Road ends at the homes and, at one point, the Road extended to Piper Ridge Road. He further stated that, although the roadbed remains, it is overgrown. Supervisor Barnhart also explained that, due to the topography of Appellants' land adjacent to Woodies Road, the Township would not issue driveway

5

permits allowing Appellants access to Woodies Road.[6]  Supervisor Barnhart acknowledged that, without such access, the Road was Appellants' only access to their properties.

In its October 12 Order, the trial court noted:

In Pennsylvania, the [Code] came into effect in 1933 and . . . created a requirement for formal action to vacate township roads when they were abandoned, but there was no evidence to show that the [Road] was formally abandoned by [the T]ownship after 1933 based on the existing records.

R.R. at 93a.

The trial court reasoned:

It is clear that at some point in time, [the Road] was a [T]ownship road and was relocated to its current location and later renamed Woodies Road.  It appears that the move was made sometime between 1899 and 1939.

[Appellants] and [Appellees] have the burden of proof to establish that [the Road] is a public road.  *Warner-Vaught v*[.] *Fawn T*[*wp.*], 958 A.2d 1104 (Pa. Cmwlth. 2008).

Here, the [trial c]ourt believes the evidence establishes that [the Road] was at some point a [T]ownship road.  The question becomes whether it was abandoned by [the Township] sometime prior to the effective date of the [Code] in 1933 in which case the [T]ownship would not have had to comply with the requirements of the [Code] to abandon that [R]oad.

---

[6] Supervisor Barnhart testified:

I didn't think [issuing driveway permits] would be a good idea because of the way the terrain is out there.  It was prone to road slides, there is a lot of water that comes off those hills, and if you cut into that bank below, it could cause a road slide.  We have had that happen on down the road and we didn't want to see another problem.

R.R. at 54a.

The only thing that can be established is that it appears by 1939, most of the [Road] had grown over.

What [Appellants] and [] [Appellees] cannot establish is that the abandonment of [the Road] by the [T]ownship occurred once the [Code] came into effect in 1933 which would have required [the] Township to follow the requirements of the [Code] to abandon [the Road].

Therefore, the [trial c]ourt must conclude that it is not a public road.

R.R. at 94a-95a.

With respect to relief, the trial court concluded:

Since the [trial c]ourt concludes that [the Road] is not a public road, the [trial c]ourt must determine the rights of the parties with the exception of [] Benny [] Basinger[,] since it has already addressed his rights.

Having reviewed the law provided by the parties and based on its own research, the [trial c]ourt concludes that [Appellants] can continue to use [the Road] adjacent to their property as a private road with the requirement that they maintain it as such.

The portion of [the Road] that runs along [Appellees'] property which is outside of the [] Subdivision is another matter.

The [trial c]ourt concludes that [Appellants] can only use that portion of [the Road] if they have no other access to their property.

[Appellants] maintain that that is the case because Supervisor [] Barnhart[,] who testified at trial[,] indicated that the topography of their property would not allow a driveway to be built off of Woodies Road.

However, before they can establish that they can use the portion of [the Road] that is adjacent to [Appellees'] property, they must in fact request a permit for a driveway. If the [T]ownship does in fact deny the same, it appears that [Appellants], with the possible exception of [the Bissetts], would have no access to their property without

7

> continuing to use [the Road] including the portion adjacent
> to [Appellees'] property.

R.R. at 96a-97a.  Appellees and Appellants (with the exception of Benny Basinger) filed motions for reconsideration.  On November 2, 2021, the trial court denied the parties' motions.  Appellants and Appellees appealed to this Court.[7]  This Court consolidated the appeals.[8]

On January 4, 2022, Appellants filed, in the trial court, a petition for preliminary injunction and contempt of court (Petition) pertaining to a dispute involving maintenance of the Road adjacent to Appellees' property.  Therein, Appellants alleged that they had applied for a driveway permit, but the Township denied their application.  *See* Supplemental Reproduced Record (S.R.R.) at 13b.  Appellants attached thereto a November 15, 2021 letter, purportedly from Supervisor Barnhart, which stated that the Township denied approval for a Road Encroachment Permit to provide an alternate route to enter Appellants' properties.  *See* S.R.R. at 29b.  Appellees filed a response to the Petition.  On January 10, 2022, the trial court issued a memorandum order (January 2022 Memorandum Order) preserving the status quo, denying relief, and summarizing the trial court's October 12 Order on the merits.

---

[7] "This Court's 'scope of review is limited to determining whether the trial court abused its discretion, committed an error of law or violated constitutional rights.'" *Schantz v. Bahry*, 43 A.3d 536, 540 n.5 (Pa. Cmwlth. 2012) (quoting *Mento v. Bd. of Sch. Dirs. of Montour Sch. Dist.*, 35 A.3d 66, 68 n.3 (Pa. Cmwlth. 2011)).

> An appellate court's standard of review in a declaratory judgment
> action determines whether the trial court committed a clear abuse of
> discretion or an error of law.  In a case where the issues are questions
> of law, the standard of review is *de novo*.  The scope of review is
> plenary.

*City of Phila. v. Zampogna*, 177 A.3d 1027, 1034 n.9 (Pa. Cmwlth. 2017) (citation omitted).

[8] The Township also filed a brief as appellee in this Court arguing, *inter alia*, that the trial court correctly held that the Road was **no longer** a public road.

The January 2022 Memorandum Order explained, in pertinent part:

[The trial court] note[s] that this litigation involves the status of [the Road].

Following a non-jury trial [the trial court] entered [the October 12 Order].

The essence of this [trial] court's finding was that [the Road] was no longer a public roadway and therefore [Appellants] could continue to use the portion adjacent to their real property as a private roadway which they would have to maintain and they would be permitted to use the portion of the [Road] adjacent to [Appellees'] real property if they could not obtain a permit from [the] Township to construct a driveway to their property off of Woodies Road.

. . . .

There are really only three[ ]possible outcomes of the [instant] appeals. (1)[] The [Commonwealth] Court determines [Appellants] can continue to use [the Road] as a private roadway as they have done for years unless they have another way to get to their property either based on this [trial] court's reasoning []or alternative reasoning by the [Commonwealth] Court; (2) the [Commonwealth] Court determines that [the Road] is still a public road[;] or[] (3) the [Commonwealth] Court determines [Appellants] may no longer get to their property by crossing the portion of [the Road,] adjacent to [Appellees'] property. [The trial court] believe[s] the latter result is unlikely as if [Appellants] (with the possible exception of the Bissetts) can't get to their land but for the use of [the Road] such a result would cause the harsh result of them being unable to access their property.

. . . [The trial court] take[s] this opportunity to make it clear [that the October 12 O]rder was intended to mean that those parties who cannot get a driveway permit to build a driveway to Woodies Road and would therefore have no other access to their property can continue to use the portion of [the Road] adjacent to [Appellees'] property to access their lots as they have done for years.

9

[][Appellees] are correct in their pleadings that [the October 12 O]rder did not indicate [Appellants] could make any changes or repairs to [][Appellees'] portion of [the Road].

[The trial court's January 2022 Memorandum Order] is there [sic] intended to require [][Appellees] to maintain their portion of [the Road] so that [Appellants] may use it for access to their properties as they did before this litigation began and therefore there should be no need for [Appellants] to do anything to maintain that portion of [the Road] and they should not do so.

S.R.R. at 1b-2b.

## Discussion

Initially, both the Township and Appellees contend that the trial court erred because, notwithstanding that all parties agreed before the trial court that the Road had previously been a public road, Appellants did not prove that the Road had ever been a public road.

This Court has explained:

> [Judicial admissions] are formal concessions in the pleadings in the case or stipulations by a party or its counsel that **have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact**. Thus, **the judicial admission**, unless allowed by the court to be withdrawn, **is conclusive in the case**[.]
>
> **Judicial admissions may arise from** a party's statement in its pleadings . . . [or] a party's failure to respond as required by the pleading rules. . . . **An attorney's admission during the course of a trial is treated as a judicial admission**. **A party's statements in its brief or oral argument to the trial court are treated as a judicial admission**.

10

> . . . [**J**]**udicial admissions are conclusive**. A party may not offer evidence to contradict the judicially admitted facts . . . [.]
>
> L. PACKEL AND A. POULIN, PENNSYLVANIA EVIDENCE 2d ed. § 127, at 30-31 (1999) (footnotes and citations omitted).

*Bartholomew v. State Ethics Comm'n*, 795 A.2d 1073, 1078 (Pa. Cmwlth. 2002) (bold and underline emphasis added); *see also Pa. State Police, Bureau of Liquor Control Enf't v. Big D Rests., LLC*, 149 A.3d 890, 901 (Pa. Cmwlth. 2016) (quoting *Piper Aircraft Corp. v. Workmen's Comp. Appeal Bd. (Bibey)*, 485 A.2d 906, 908 (Pa. Cmwlth. 1985)) ("It is well settled . . . that an admission of an attorney during the course of a trial is binding upon his client."). "[T]he key element of a judicial admission is that **a fact which has been admitted for the advantage of the admitting party cannot subsequently be refuted by that party**." *Nasim v. Shamrock Welding Supply Co.*, 563 A.2d 1266, 1268 (Pa. Super. 1989) (emphasis added).

Township's counsel represented to the trial court that, "[a]t some time way back when, 1889 is the earliest that we know of, **that [R]oad was a [T]ownship road** that went all the way up to Piper Run Road." Notes of Testimony (N.T.), June 7, 2021, at 20 (emphasis added).

Similarly, Appellees' Counsel also declared to the trial court that the Road had been a public road and, in fact, it continued to be a public road. Appellees' Counsel stated:

> We also believe[,] now in contradiction to [the April 25 Letter], a letter from myself to [Appellants] indicating that my clients were going to stop them from using the [R]oad, after further research, I believe that [**the Road**], which is a driveway used by my clients and by [Appellants], **is a public road**.

11

And for basically the same reasons, and I'm not going to rehash everything that [Appellants' counsel] said as to why we believe that it is, one thing that I would add along with the fact that that map, the [T]ownship survey of the [Subdivision] which indicates [the Road] as being [O]ld T-568, which the [T]ownship adopted and obviously did not object to, and so they were acknowledging that [the Road] was a public road.

However, I also have evidence in that deed of my clients[], . . . and I'll show this in an exhibit from an aerial photo, an overlay of that plot of track two, that two of - one column says it goes to a stone in the road, and then - and that point is on [the Road]. It is like basically just about in front of [Appellees'] house on this driveway. And then at the other end of the driveway close to where it now connects with Woodies Road, the next call says ["]thence along public road to a stone in road.["]

Therefore, **we are saying that** - and that survey was from 1899. So, in 1899, [**the Road**] **was the public road**. There is nothing in the records . . . showing that [the Road] was ever open as a public road, but I think that's rather common. I have several pages from the road dockets where they said after diligent search nothing could be found on various roads throughout the [T]ownship.

. . . .

There is nothing showing that [the Road] was ever closed, so **therefore it is still a public road** and the [T]ownship has a statutory duty to maintain any road that has not been formally closed.

N.T., June 7, 2021, at 13-15 (emphasis added). Based thereon, the trial court stated: "[Appellees] maintain that the [Road] is a public road that has not been formally closed . . . ." R.R. at 92a.

Notwithstanding, Appellees' Counsel asserts before this Court that the Road is *not* a public road. In Appellees' Response Brief to Appellants' Reply Brief, Appellees' Counsel stated: "[Appellees] **now** contend that [the Road] **<u>never</u>** was a

[T]ownship road." Appellees' Response to Appellants' Reply Br. at 1. (bold emphasis added). Appellees also now argue to this Court:

> The [t]rial [c]ourt's [October 12 Order] **should be reversed because the [trial c]ourt** abused its discretion and **erred** as a matter of law **by holding that** [**the Road**] **was a public road** since [Appellants] failed to meet the[ir requisite] burden of proof to establish that [the Road] ever was a public road . . . .

Appellees' Br. at 6 (emphasis added).

Given that Appellees' Counsel declared in his April 25 Letter,[9] and again extensively during trial, that the Road had been a public road, and given the Township's counsel's representation to the trial court that the Road had been a public road, it was **undisputed** before the trial court that the Road had been a public road. The parties are bound by their counsels' judicial admissions as "judicial admission[s] . . . [are] conclusive in the case" and "have the effect of withdrawing a fact from issue and dispens[e] wholly with the need for proof of the fact." *Bartholomew*, 795 A.2d at 1078. The Pennsylvania Superior Court has declared that litigants "will not be permitted to 'blow hot and cold' by . . . taking a position [on appeal] inconsistent with that by which [they] previously induced the trial court to act . . . ." *Reese v. Reese*, 506 A.2d 471, 474 (Pa. Super. 1986); *see also Commonwealth v. Johnson*, 852 A.2d 315 (Pa. Super. 2004).

Similarly:

> Pursuant to the doctrine of judicial estoppel, **a party to an action is estopped from advocating a position inconsistent with his or her position in a previous action if the prior position was successfully maintained**. *Associated Hosp*[.] *Serv*[.] *v. Pustilnik*, 439 A.2d 1149 ([Pa.] 1981). Certainly, **this doctrine would apply with equal if not greater force when a party switches positions within the same action**. *See Selected*

---

[9] The trial court admitted the April 25 Letter into evidence as Appellants' Exhibit 7.

13

> *Risks Ins*[.] *Co. v. Kobelinski*, 421 F. Supp. 431 (E.D. Pa. 1976) (judicial estoppel is the well[-]established principle that a party may not assert contrary positions in the same or related proceedings). Federal courts have long applied this principle of estoppel **where litigants "play fast and loose" with the courts by switching legal positions to suit their own ends**. *Scarano v. Cent*[.] *R. Co. of New Jersey*, 203 F.2d 510 (3d Cir. 1953)[.]

*Ligon v. Middletown Area Sch. Dist.*, 584 A.2d 376, 380 (Pa. Cmwlth. 1990) (emphasis added). The Township's and Appellees' position before the trial court that the Road had been a public road was successfully maintained. Appellees' arguments to this Court on appeal, **directly contradicting** their emphatic representations to the trial court that the Road was a public road, are cogent examples of the above-referenced disapproved litigant conduct, and, accordingly, Appellees are estopped from maintaining the position that the Road was never a public road.

Next, Appellants contend that the trial court erred by concluding that the Township had abandoned the Road and thus it was vacated, and no longer a public road. They claim that because the Township did not have authority to vacate a public road absent statutory authority, the Road remains a public road.

Pennsylvania Courts have long held that "townships do not have any common-law power to build, improve or vacate roads." *Clifford Twp. v. Ransom*, 398 A.2d 768, 769 (Pa. Cmwlth. 1979); *see also Shapera v. Allegheny Cnty.*, 25 A.2d 566, 568 (Pa. 1941) ("Since . . . public highways are within the control of the [C]ommonwealth and counties and townships do not have any common-law power to build or improve roads, it is well settled that the statutory directions for their creation and abolishment must be strictly complied with."); *Luzerne Twp. v. Fayette Cnty.*, 199 A. 327, 329 (Pa. 1938) ("Since counties and townships do not have any common-law power to build or improve roads, the statute vesting such power in them must be strictly complied with[.]"); *Greene Cnty. v. Ctr. Twp.*, 157 A. 777, 780 (Pa. 1931) ("Counties and townships do not have common-law powers to build or

14

improve roads. When they act in such matters they must point to an act of assembly for authority[.]"). Further, "[t]o cause the 'land' to revert, the road must be vacated in the manner provided by law, and, as public highways are within the control of the [C]ommonwealth, the statutory directions for their creation and abolishment must be followed." *Breisch v. Locust Mountain Coal Co.*, 110 A. 242, 243 (Pa. 1920). Therefore, the Township could not vacate a road before the Code's enactment, unless there was a statute authorizing the same, and the Township could not vacate a road after the Code's enactment simply by abandoning it.

Here, the parties agreed that the Road had been a public road at some point. In addition, there was no proof that there was a statute authorizing the Township to vacate the Road before the Code was enacted, and there was no evidence that an ordinance had been enacted authorizing the Township to vacate the Road *after* the Code was enacted. Accordingly, the trial court erred when it held that the Township had vacated the Road by abandoning it.[10]

---

[10] Notably, in *Breisch*, which was decided before the Code's enactment in 1933, a coal company sought to remove its coal that ran along both sides of a public highway. To do so, the coal company was required to partially destroy the road. After consultation with several supervisors, the coal company built a new road making a change in the route, increasing the distance a little over a half mile. After the coal was excavated and the road partially destroyed, the township supervisors sought a mandatory injunction to require the coal company to restore the public road as it existed prior to the excavation. The lower court denied an injunction, and the Pennsylvania Supreme Court reversed, explaining:

> When counsel in this case agreed that the road should be vacated, thus permitting the coal company to continue the nuisance and the public to be deprived of the use of the highway for travel, they clearly exceeded any authority they had as attorneys and they attempted to do **something which even the [township] supervisors had no power to do**; **and the same may be said as to supplying the road vacated.** **To permit such an evasion of a legislative mandate as to highways would be to create an easy method to have important highways changed to suit the convenience of a few persons without notice to others interested who might be injured thereby**.

## Conclusion

For all of the above reasons, the trial court's October 12 Order is reversed.

_____
ANNE E. COVEY, Judge

---

*Breisch*, 110 A. at 243 (emphasis added).  The *Breisch* Court further declared:

> **The defendants did not acquire any right to excavate the** [subject road] **for the purpose of their stripping operation because of any consent the supervisors of the township might have given**, **official or otherwise**.  In Pennsylvania, a highway is the **property of the people**, -- not of a particular district, but of the whole state, -- and when a public right has been acquired, it cannot be lost by nonuse[] **or by municipal action not expressly authorized by law**.

*Id*. at 243 (emphasis added).  Thus, in 1920, the *Breisch* Court concluded that the township supervisors could not have granted official consent to excavate the road because the highway was the "property of the people[.]"  *Id*.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Samuel R. Basinger, Dawn E. Basinger, :
Ryan Bissett and Dawnette Louise :
Bissett, his wife, and Benny D. Basinger :
                         :
          v.                 :
                         :
Russell Adamson and Kimberly :
Adamson, his wife, and :
Morgan Township :
                         :
Appeal of: Russell Adamson and :   No. 293 C.D. 2022
Kimberly Adamson, his wife :
                         :
Samuel R. Basinger, Dawn E. Basinger, :
Ryan Bissett and Dawnette Louise :
Bissett, his wife, and Benny D. Basinger :
                         :
          v.                 :
                         :
Russell Adamson and Kimberly :
Adamson, his wife, and :
Morgan Township :
                         :
Appeal of: Samuel R. Basinger, :
Dawn E. Basinger, Ryan Bissett, :
Dawnette Louise Bissett, his wife, and :   No. 294 C.D. 2022
Benny D. Basinger :

## O R D E R

AND NOW, this 2nd day of June, 2023, the Greene County Common Pleas Court's October 12, 2021 order is REVERSED.

 

_____
ANNE E. COVEY, Judge